## WALLACE ET AL. *v*. WALLACE.

[75 South. 449, Division A.]

1. WILLS. *Estate created. Fee tail. Fee simple. Statute.*
   Where a testator devised land to his nephew and to the heirs of his body, the nephew took a fee simple title to the land, since the will in such case devised an estate in fee tail, which under Code 1906, section 2765, prohibiting estates in fee tail was converted by this statute into a fee.

2. WILLS. *Parol evidence.*
   In a suit to construe a will, oral testimony showing the intent of the testator is incompetent to vary the express provisions of the will, where there is no ambiguity nor reasonable doubt as to the intent of the testator as plainly expressed by the fixed and technical meaning of the language of the will.

APPEAL from the chancery court of Tate county.

HON. J. G. McGOWAN, Chancellor.

Suit by R. G. Wallace and others against J. P. Wallace. From a decree for defendant, plaintiff appeals.

Appellants were complainants in the court below, and appellee was defendant. The suit involves the construction of the following will:

### Will of James Monroe Wallace.

In the name of God; Amen: I, J. M. Wallace, of Panola county and state of Mississippi being of sound mind, memory and understanding do make this my last will and testament in manner and form following:

1st. I will devise and bequeath to the children of my deceased brother, viz.:—Caroline A. Wallace and Virginia L. Wallace and Cornelia Estes and to the heirs of their body, the southeast quarter of section thirty-one (S. E. ¼ Sec. 31) town. (6) six, range seven (R. 7) and the northwest quarter of section six (N. W. ¼ Sec. 6) town, range seven (T. 7, R. 7) in Panola County and state of Mississippi.

2d. I will, devise and bequeath to John P. Wallace, son of my deceased brother John P. Wallace and to the heirs of his body, section five (Sec. 5) town, seven (T. 7) range seven (R. 7), on which I reside and the northeast quarter of section six (N. E. ¼ S. 6) town seven (T. 7) range seven (R. 7) in Panola county, and state of Mississippi; also an undivided one-half interest in the following described lands, viz.:—Section two and eleven sec. (2 & 11) and the east half of the east half of section ten (E. ½ of E. ½ Sec. 10) and the half of the half of southeast quarter of section three (½ of ½ of S. E. ¼ of sec. 3) and fractions of southwest quarter of section 12 and northwest quarter of section thirteen (Frac's S. W. ¼ of Sec. 12 & N. W. ¼ Sec. 13) and half of northeast quarter of section 14 and frac. of southeast quarter of section fourteen (½ of N. E. ¼ Sec. 14 and frac. S. E. ¼ Sec. 14). All the above described lands being in Tunica and Tate counties, state of Mississippi, in township six (T. 6) range ten (R. 10 W.) and to which I previously deeded to said John P. Wallace an undivided one-half interest.

3d. I will, devise and bequeath to· the children of my deceased brother Wm. M. Wallace viz.: Jeanette Wallace, James C. Wallace, Winter C. Wallace and Ida G. Gop and to the heirs of their bodies, the south half of section six (S. ½ sec. 6) town, seven, range seven, and the east half of section one (E. ½ Sec. 1) town seven, range eight. Exhibit A—(Copy.) (T. 7 R. S.) in Panola county and state of Mississippi.

4th. I will, devise and bequeath to Medara Duncan, daughter of my deceased sister, Caroline Rich, fifteen hundred dollars, which is given instead of any land as given above to my other nephews and nieces.

5th. I will, devise and bequeath to my nephew John P. Wallace all my household, table and kitchen furniture, and to nieces Caroline and Virginia Wallace the oil portraits of my wife and self.

6th. I will, to my namesake J. M. Wallace son of
John P. Wallace, my gold watch chain and pencil and to
my namesake J. M. Wallace, son of Jeanette Wallace,
a gold watch and chain worth $175 and to my namesake
Monroe Wallace Wesson, son of my old friend I. G. Wes-
son, a gold watch worth $150.

7th. After payment of my just debts and special lega-
cies as before devised, I will and direct that my executors
hereinafter named shall sell all other property real and
personal, that I may die possessed of and collect what-
ever notes or accounts may be due me, and divide the
proceeds, together with what money I may have on hand,
equally between each nephew and niece hereinbefore
named, share and share alike. Each taking *per capita;*
and should any nephew or niece have died, leaving a
child or children such child or children shall take the
part their parent if living would be entitled to, and
each nephew or niece shall account for whatever ad-
vance of money I may have loaned them with the in-
terest thereon.

8th and lastly. I appoint my nephew John P. Wallace
and my niece Caroline A. Wallace executor and executrix
of this my last will and testament, not releasing and in-
tending to release them by this appointment from any in-
debtedness due me. No security shall be required of them
as executors, neither shall they charge for services be-
yond necessary costs and expenses.

Signed, sealed and declared to be the last will and
testament of J. M. Wallace, this the seventh day of
July, 1893.

[Signed] J. M. WALLACE. [Seal.]
In the presence of    O. D. SLEDGE,
                      J. B. SMITH,
                      J. T. SLEDGE.

*Holmes & Sledge,* for appellant.

Code of 1906 (sec. 2448, Code of 1892 and sec. 1203,
This case involves the construction of section 2778,

114 Miss.—38

Code of 1880.) It also has a special reference to section 2764, Code of 1906 (sec. 2435, Code of 1892) by which section we see that although the Code of 1892, by which section we see that although the words deemed necessary by the common law to transfer an estate of inheritance be not added, shall be deemed a fee simple if a less estate be not limited by express words, or unless it clearly appear from the conveyance or will that a less estate was intended to be passed thereby.

Section 2765, Code of 1906 (sec. 2436, Code of 1892.) Prohibits estates in fee tail; and every estate which, but for this statute, would be an estate in fee tail, shall be an estate in fee simple; but any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman and, in default thereof, to the right heirs of the body of the remainderman, and in default thereof, to the right heirs of the donor, in fee simple.

By section 2776, Code of 1906, (sec. 2446, Code of 1892), we see that a devise to one for life, with remainder to his heirs or heirs of his body, shall be held to create an estate for life in such person, with remainder to his heirs or heirs of his body, who shall take as purchasers, by virtue of the remainder so limited to them.

In the devise before the court the following language, is used: "I will devise and bequeath to John P. Wallace, and to the heirs of his body." Testator did not say in the language of section 2776, to John P. Wallace for life with remainder to the heirs of his body, but we take it that the language used is so plain that this the only construction that could be put upon it and judging from the instrument itself, this was the evident intention of the testator and we must remember that as this court has well said in *Crosset* v. *Clements,* 7 So. 207; *Davenport* v. *Collins,* 96 Miss. 716, 51 So. 549, 40 Miss. 729, and many other cases that the intention of the testator is the

"polar star" for guidance in the interpretation, and the intention is the prime object to ascertain. After the intention of the testator has been determined, then the rules of law will be applied to this intent.

The intent of the testator in the case at bar is very plain, and we find but little difficulty in at once reaching the conclusion that it was the intention of the testator, that J. P. Wallace should take a life estate in the lands devised, and at his death the heirs of his body should take the remainder in fee, and that those who survive John P. Wallace and were in being at the time of his death would take the remainder in fee.

Section 2778 of the Code of 1906 above referred to enlarges the question of heirship, or rather limits the class, by making any child born to him within ten months after his death, "heirs of his body." In order to make ourselves plain, as to the views we take of this matter let us look into the history for just a moment of our statute, with reference to fee tails and limitations of estates as well as the rule in Shelly's case.

Under the common law the rule of construction was to defeat the intention of the testator if the estate devised was a succession of donees indefinite in number, and to so construe devises where they were given to a class in succession so that the first taker would take the fee, regardless of the intention of the testator and the only way a testator could meet this common-law rule of construction was to limit by definite and certain language, the class to whom he gave his property, and if one of the class should die and that class was made to depend upon survivorship then the contingent limitations would fail. To illustrate, as well said by this court in *Middlesex Banking Company* v. *Field,* 84 Miss. 646, 37 So. 139 'A' devises Blackacre to 'B' and the heirs of his body, and if 'B' dies without issue, etc., over to 'C' and his heirs. The intention of the devisor is to create an estate tail, and he meant the property to go to the heirs of B's body as long as there were any. The construction

put on the words "die without issue" by the courts was in the line of this intention, to wit: that they meant not only issue of B living at B's death, but any issue of B's grandson, great grandson, etc., as long as any decedents of B were living; and hence that there were two contingencies, on the happening of either of which the limitation to C should take effect, to wit: failure of B's death and second, failure of B's issue at any time in the future. The contingency was uncertain and indefinite and it might never fail; and hence that the limitation to C was not to take effect until B's descendants ultimately at an indefinite time failed. The court thus construing the words, of course gave B an estate tail, and this he could bar, and acquire a fee-simple and sell the lands and his heirs would not take what the devisor meant; and this resulted in a defeat of devisor's intention.

By section 2776, Code of 1906, we see that this statute specifically says: "His heirs or heirs of his body," are words that can be used for the purpose of designating the person to whom such deeds or devises can be made.

The law applied to the will of J. M. Wallace simply says that he made his will that gave to J. P. Wallace a life estate and at his death the property so bequeathed should go to the heirs of his body living at the time of his, J. P. Wallace's death, or born within ten months thereafter. Suppose it was the intention of J. P. Wallace to create an estate in fee tail the law says that he cannot do this but that the language used by him would create an estate in J. P. Wallace for life with the remainder in fee to the heirs of his body living at the time of his death, or born within ten months thereafter. Just because language used by testator, if given the common-law interpretation, must create an estate in fee tail does not make the devise void, but simply means that the construction provided for by statutes will place upon such language, if the testator had not by specific language limited the specific class to which he intended the remainder to go, there might have been some reason for

contending, that the devise was violation of our statute against perpetuities. To illustrate, this testator said "to the heirs of his body," which is equivalent to saying, and which means, his children, or grandchildren living at his death. They are named as a class, and a specific class, for testator did not say to John P. Wallace and his heirs. "Heirs of the body" as used in a devise of property to a certain person, remainder over to the heirs of the body of another person, who had children living at the time of the execution of the will, which fact was known to testator was construed to mean children or decendants, and to include grandchildren. *Knight* v. *Knight,* 56 N. C. 167; *Stratton* v. *McKinnie* (Tenn.), 62 S. W. 636-640; *Shaw* v. *Robinson,* 20 S. E. 161-162, 42 S. C. 342; *Gibson* v. *Gibson,* 49 N. C. 425-428; *Roberts* v. *Ogborne,* 37 Ala. 174-179.

*M. H. Thompson,* for appellee.

The only question in this case is whether or not the use of the words "and to the heirs of his body" in the will of J. M. Wallace, created estate tail with a life estate in J. P. Wallace, with remainder over to his children, appellants herein or whether the devisee took a fee simple title.

The laws of Mississippi have condemned the creation of "estates tail" as early as 1822, in Hutcheson Code of Mississippi, that public policy demanded and secured legislative prohibition against the creation of "estates tail."

The first explicit and definite legislative enactment declaring that "fee tails" in Mississippi were to be construed and declared to be "fee simple estate" is contained in article 2 at page 307 of the Code of Mississippi 1857, together with the companion act, article 3 of same code abolishing "estates in fee tail." Both of which articles have been brought forward literally in every subsequent code of Mississippi.

The first question to be settled in this case is, do the words used by the testator to wit: "I devise and bequeath to J. P. Wallace and the heirs of his body" constitute an "estate fee tail' such as was prohibited by the Code of Mississippi in 1857 and all subsequent Codes. Such language has been held by the common-law writers, and the judicial decisions of every state in the union to constitute and create such an estate. *Terry* v. *Hood,* 55 So. 423; *English* v. *McCray et al.,* 48 So. 113; *Smith* v. *Greer,* 6 So. 911; 4 Kent's Commentaries, page 13, sec. 4, Lecture 54; 4 Words & Phrases, page 3267, 3271; *Wilson* v. *Alston; Kinsey* v. *Jones,* 39 Miss. 230; *Dibbrell,. Trustee* v. *Carlisle et al.,* 49 Miss. 691; *Suddeth* v. *Suddeth,* 60 Miss. 366; *Harring* v. *Flowers,* 45 So. 571; *Pressgrove* v. *Comfort,* 48 Miss. 644.

Courts have repeatedly and universally held that a will can be construed, only, when the language used by the testator is ambiguous. Under the decisions cited above there is no ambiguity in the language used by the testator in the will under consideration. The intention of the estator prevails only when the legal conclusion reached by the court do not contravene the statutory law, and the legal results which the complainants, appellants here, asks the court to give the words used in the will, to wit: "the heirs of his body" is directly in conflict with the statutory provisions as well as the judicial utterances of our supreme court.

The language used by the testator in the case at bar has a fixed and technical meaning, and there is nothing in the will to show that the testator did intend that these words should carry a contrary meaning. They are not ambiguous and therefore not the subject of parol testimony. *Succession of Quinlan,* 43 So. 249; *Ball* v. *Phelan,* 49 So. 957; *Floyd* v. *Smith,* 51 So. 537.

In *Montgomery* v. *Wilson,* 63 So. 503, the court uses the following language: "The cardinal rule in interpreting wills is to ascertain the real intent of the tes-

tator, which, if ascertainable from its words and not in conflict with the law must prevail."

Therefore I respectfully submit that there is no ambiguous phraseology, either patent or latent, in the will at bar, and certainly the court could not clothe the words used by the testator, to wit: "Heirs of his body" with legal consequence along channels positively prohibited both by statutory law and judicial interpretation.

I respecfully submit that this case should be affirmed.

HOLDEN, J., delivered the opinion of the court.

This suit was begun in the chancery court of Tate county, where the appellants sought by bill to restrain the commission of waste upon certain lands and to have construed the will of J. M. Wallace, deceased; and from a decree in favor of appellee, this appeal comes here.

It appears that J. M. Wallace died testate, owning considerable property. Under the terms of his will, item 2, he left to the appellee, John P. Wallace, "and to the heirs of his body" certain lands therein described. At the time of the death of J. M. Wallace, the appellee J. P. Wallace had three living children who are the appellants herein. The appellants filed this bill, alleging that they "had a remainder" in said estate, and seeking a construction of the will of J. M. Wallace, and asking that appellee J. P. Wallace be restrained from disposing of any of the lands or timbers thereon which had been devised under the will of J. M. Wallace. The appellee J. P. Wallace demurred to the bill, which demurrer was sustained by the chancellor. The only question in this case is whether the words, "and to the heirs of his body" in the will of J. M. Wallace, deceased, created an "estate tail" with a life estate in J. P. Wallace, with remainder over to his children, appellants herein, or whether the devisee, appellee J. P. Wallace, obtained a fee-simple title to the property, under the provision of the will in question.

The appellants contend that it was the intention of the testator, from the reading of the will, that the appellee J. P. Wallace should take only a life estate in the property, and that the remainder goes to the appellants, the children of appellee, who were living at the time the will was executed. The appellants also urge that the chancellor erred in refusing to consider the oral testimony offered by the appellants, showing that the testator intended that the appellee J. P. Wallace was to receive only a life estate and the remainder over was to go to the heirs of his body, who were the appellants. The plain and unambiguous provision in question in the will devised the appellee J. P. Wallace an estate in fee tail. Under section 2765, Code of 1906, estates in fee tail are prohibited, and, when created, become estate in fee simple, under the statute. Section 2776 provides that a devise of property to any person for life, with remainder to the heirs of his body, shall create an estate for life in such person, with remainder over to the heirs of his body, who shall take as purchasers.

It clearly appears to us that the testator here did not intend to devise a life estate to the appellee J. P. Wallace, as the will fails to do so, but it expressly and plainly devises an estate in tail to the appellee, which, of course, under the statute is void, and vests in appellee a fee-simple title to the property involved.

The chancellor was correct in holding that the oral testimony, showing the intent of the testator, was incompetent to vary the express provision of the will, because there was no ambiguity nor reasonable doubt as to the intent of the testator as plainly expressed by the fixed and technical meaning of the language of the will. The value and strength of unambiguous written wills would be seriously imparied were it permissible to vary by oral testimony the plain and clear intention of the testator as expressed by his written testament. There can be no doubt or misunderstanding as to what the testator intendend by the language used in the

provision of his will here in question. Oral testimony to vary the plain and obvious meaning and intent of the language used is not admissible in construing the instrument. *Succession of Quinlan,* 118 La. 602, 43 So. 249; *Ball* v. *Phelan,* 94 Miss. 293, 49 So. 957, 23 .L. R. A. (N. S.) 895; *Floyd* v. *Smith,* 59 Fla. 485, 51 So. 537, 37 L. R. A. (N. S.) 651, 138 Am. St. Rep. 133, 21 Ann. Cas. 318; *McKenzie* v. *Jones,* 39 Miss. 230; *Dibbrell* v *Carlisle,* 48 Miss. 691; *Sudduth* v. *Sudduth,* 60 Miss. 366; *Haring* v. *Flowers,* 91 Miss. 242, 45 So. 571; *Pressgrove* v. *Comfort,* 58 Miss. 644.

The decree of the lower court is affirmed.

*Affirmed.*