CARTER, et al. *v.* SUNRAY MID-CONTINENT OIL Co., et al.

No. 40303 April 22, 1957 94 So. 2d 624

*Satterfield, Shell, Williams* & *Buford,* Jackson, for appellants.

*John F. Curran,* Tulsa, Oklahoma; *Laub, Adams, For-man & Truly,* Natchez; *Wynn, Hafter, Lake & Tindall,* Greenville; *Henley, Jones & Woodliff, Hazlehurst,* for appellees.

14

APPELLANTS IN REPLY.

McGehee, C. J.

This is an appeal from a final decree of the Chancery Court of Wilkinson County sustaining a demurrer to an amended bill of complaint and dismissing the same upon the complainants having declined to plead further. The suit involves the construction of the will of Mrs. Celete F. Sims executed on March 30, 1899, at a time when what was commonly known as the "Two Donee Statute" of this State, Section 2436, Code of 1892, was in full force and effect, the same not having been omitted from the Code until 1930.

The testatrix was a widow who died in October 1899, leaving as her surviving children, W. R. Sims, a son, who was then married and living with his wife and one child, and three adult unmarried children, John C. Sims, Cairie L. Sims and Mary Sims. The father had died many years prior thereto. There had been conveyed to W. R. Sims his portion of the inheritance, a home had been built for him on his separate land, and the house had been furnished with the assistance of his mother.

At the time of the execution of the will and also at the time of the death of the testatrix, the only children other than W. R. were unmarried and living in the plantation home with their mother in Wilkinson County. The will devised the lands which comprised the plantation at the time of the execution of the will, and the present ownership of those lands is the subject matter of this suit.

The bill of complaint, as amended, alleges the foregoing facts, and further that the testatrix at the time of the execution of the will "was concerned that the home and plantation remain intact to be held in common jointly for all of her said unmarried children as a class until the time of the death of the last survivor; that the husband of the said testatrix had died when said children were young, and for more than twenty years she had assumed full responsibility for their care and main-

tenance; (and) that the testatrix further desired that if one or more of such children should marry and have children that the plantation and home should continue to remain intact and that title should vest in such grandchildren''—as the bodily heirs of her son John, and of her daughters Mary and Carrie. But since the will, however, appears as an exhibit to the amended bill of complaint, we must look to the provisions of the will to ascertain the desire and intention of the testatrix, since the allegations of the amended bill are not controlling as to what the testatrix desired, when the will itself was made an exhibit to the pleading which was being considered on demurrer.

The pertinent provisions of the entire will to be considered on the issues here involved are numbered for convenience and to avoid some future repetition of the language of each clause in full, and are as follows:

Clause (1) ''I devise and bequeath all my real estate as follows, equally to my son John C. Sims and my daughters Carrie L. Sims and Mary Sims in common as long as they remain single;''

Clause (2) ''but upon the marriage of either of them, ten acres of said land including the dwelling, barn, outhouses and orchard but not including the negro cabins to go exclusively to those remaining single, & they may select the said ten acres to be exclusively owned by them, if another of said three devisees shall marry then said ten acres shall go exclusively to the one remaining single, but if all three should marry then said ten acres shall again be the common property of all three. And in either case the remaining land excepting the said ten acres shall be the common property of all three, whether married or single''.

Clause (3) ''If either of my said three devisees shall die without leaving bodily heirs living at the death of said devisee then said real estate shall go to the surviv-

ors, or if two of them die without bodily heirs then the said land shall go to the survivor,"

Clause (4) "provided that if my son John C. Sims shall survive both his sisters, and they both shall die without bodily heirs, then the said John C. Sims shall take the said ten acres, above mentioned as his exclusive property, and the balance of the land shall be equally divided between my two sons John C. Sims and W. R. Sims;"

Clause (5) "and provided further that if either of my said three devisees John C., Carrie L. or Mary shall die leaving bodily heirs, the said heirs shall take the deceased parents share"

Clause (6) "and upon the death of the survivor and last of said three devisees *leaving no bodily heirs,* if there shall at that time be bodily heirs living, of one or both of the three devisees, first dieing (sic) then said last of said three devisees may devise his share," (Italics ours)

Clause (7) "but if such survivor die intestate, (leaving no bodily heirs) the share of such survivor shall go to the bodily heirs of those leaving bodily heirs;"

Clause (8) "upon the death of all three of said devisees leaving no bodily heirs living at their deaths, the survivor may devise said land,"

Clause (9) "but if the survivor die intestate, (leaving no bodily heirs) said land shall go to W. R. Sims if then living,"

Clause (10) "but if he be then deceased it shall go to my heirs in fee simple."

The amended bill of complaint alleges, and the demurrer admits, that on June 23, 1900, John C. Sims died without having been married and without leaving bodily heirs; and that on March 3, 1901, Mary Sims died without having married and without leaving bodily heirs. The amended bill of complaint then alleges, *as*

*a conclusion of the pleader* from the provisions of the will and the deaths of John C. Sims and Mary Sims under the circumstances aforesaid, that "thereupon the share of the said Carrie L. Sims in the common estate was increased from a one-third interest in said joint life estate to the full interest therein as the last survivor, with a remainder in fee to her bodily heirs, if any, under the provisions of the will that 'if two of them die without bodily heirs then the said land shall go to the survivor, * * * and provided further that if either of my said three devisees John C., Carrie L., or Mary shall die leaving bodily heirs the said heirs shall take the deceased parent's share * * ; (and that) upon the death of all three of said devisees leaving no bodily heirs living at their deaths, the survivor may devise said land, but if the survivor die intestate (also leaving no bodily heirs) said land shall go to W. R. Sims if then living, but if he be then deceased it shall go to my heirs in fee simple'."

The amended bill of complaint further alleged "that the said Carrie L. Sims, whose share in such real estate then consisted of the entire joint life estate vested in her as the surviving named devisee, married Alexander Willard Carter on April 3, 1901. That the said Carrie L. Sims Carter died testate on August 12, 1948, leaving as her bodily heirs the complainants, who are her children by the said marriage, to-wit: Celete Carter, John S. Carter, Herman S. Carter, Alexander W. Carter, and Mrs. H. L. Lewis, Jr."

On November 21, 1930, the said Mrs. Carrie Sims Carter executed a conveyance to J. C. Whetstone, which was by an amendment to the amended bill of complaint made a part thereof, and which shows on its face that it purports to convey by warranty deed to the said grantee the fee simple title to all of the land involved in this suit; but it is further alleged that upon the death of the

said Mrs. Carrie L. Sims Carter on August 12, 1948, the remainder in fee simple vested in her said bodily heirs, and that they thereupon became vested with the fee simple title to the lands as tenants in common, and that the same was so vested in them at the time they filed this suit against the said J. C. Whetstone and his several vendees of certain mineral interests in the land. The original grantee in the conveyance of November 21, 1930, died intestate pending this appeal and the cause has been revived in the name of his heirs, who are now the appellees along with the several grantees of mineral interests, the said J. C. Whetstone claiming to have owned the surface and a portion of the minerals at the time of his death.

Thus it will be seen that generally the question presented for our decision is as to whether or not J. C. Whetstone received a fee simple title under the conveyance to him on November 21, 1930, from Mrs. Carrie Sims Carter, or received only a life estate with remainder to her bodily heirs who are the complainants in this cause; and that specifically the question presented for our decision is as to whether or not the first takers under the will, John C. Sims, Carrie L. Sims, and Mary Sims, each received a life estate in joint tenancy measured by the life of the longest liver, under the provisions for survivorship contained in the will, which provides that if the first of them to die should not leave bodily heirs, such share should go to the other two as joint tenants with the right of survivorship; and that if the second of them to die should also not leave bodily heirs, the entire share should go to the last survivor, with a remainder to his or her bodily heirs, if any; that is to say, whether the said first three takers received the land in fee simple as three separate estates, instead of life estates with right of survivorship on to the longest liver, who happened to be Carrie L. Sims, and with

the remainder to the bodily heirs of the longest liver, since the other two of the first takers had previously died without bodily heirs.

The solution of the questions presented by the provisions of the will hereinbefore quoted, and deemed pertinent on this appeal, must be reached in the light of the provisions of the statute known as the "Two Donee Statute", Section 2436, Code of 1892, which provides as follows: "Estates in fee-tail are prohibited; and every estate which, but for this statute, would be an estate in fee-tail, shall be an estate in fee-simple; but any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee simple."

It is contended by the appellees that John C. Sims, Carrie L. Sims, and Mary Sims constituted a succession of donees, exceeding two, to whom the land was devised, and that under the terms of the entire will the lands were devised to four successive donees, and that this was in violation of the prohibition against a succession of donees then living exceeding two, and that therefore the three devisees named as the first takers received a fee simple estate in the land, and that the entire estate became finally vested in fee simple in Carrie L. Sims upon the death of the other first takers under the will; whereas it is the contention of the appellants, that is to say the bodily heirs of Carrie L. Sims Carter, that the three first takers took the land as a class and as the first donee in joint tenancy with the right of survivorship, and that upon the death of the longest liver of the three first takers, the remainder went to her bodily heirs as the second donee, and that hence there was no violation of this Two Donee Statute, their argument being that their mother received a life estate in the

land formerly owned by the three first takers in joint tenancy with the right of survivorship to her as the longest liver of the class, since John C. Sims and Mary Sims had each died prior to the death of the mother of the complainants, Carrie L. Sims, and without either John or Mary having left bodily heirs.

Eliminating from Clause (1) the words "as long as they remain single" as being applicable only to the ten acres mentioned in the first sentence of Clause (2) of the will, we are called upon to determine whether the remainder of Clause (1) devises an estate in fee simple to the three first takers therein named or merely a life estate to each of them. The determination of this question will be decisive of the main issue in the case now before us, but more about that question later, in the light of the second sentence of Clause (2).

Going now to Clause (3) it is contended by the appellants that in any event (a) that the one-third of the estate vested in Carrie L. could not be affected by the two-donee statute; that this one-third was vested in her for life, and at her death the remainder was vested in her bodily heirs by virtue of the remainder limited by the will to them. (b) That the one-third of the estate vested in Mary passed upon her death without bodily heirs to Carrie L. for life, and at Carrie's death the remainder was vested in her bodily heirs as purchasers by virtue of the remainder limited to them by the will; and that since the two donees involved therein were Mary and Carrie L., both of whom were living when the will took effect, the title to Mary's interest became vested in the bodily heirs of Carrie at her death, she being the survivor of the three first takers, and that therefore the two-donee statute does not apply as to Mary's share. And (c) that the one-third of the estate devised to John passed at his death one-half to Mary and the other half to Carrie L., that is to say, one-sixth of

the entire estate to each. This contention is, of course, based upon the assumption that the three first takers only received a life estate, with survivorship to Mary and Carrie upon the death of John, and then with survivorship to Carrie L. upon the death of Mary. And it is to be conceded that the one-half of John's share which went to Mary, and later from Mary to Carrie L. upon Mary's death without bodily heirs, would involve three donees, and that hence this ulterior limitation as to one-half of John's share, or one-sixth of the entire estate, would fail, and that Carrie L. would take a fee in this one-sixth interest, resulting in the appellants being entitled to recover only five-sixths interest in the land in question. However, the appellants in contending that in any event they are entitled to at least five-sixths of the land, do not abandon their contention hereinbefore mentioned that the three first takers received the land as one estate in joint tenancy as life tenants measured by the life of the longest liver, instead of three separate estates. This contention is, of course, based upon the facts as they actually happened, instead of the several contingencies that could have happened after the will took effect.

On the other hand, the appellees contend that the three first takers each received a defeasible fee being subject to be defeatd in each instance by the owner of the defeasible fee dying without leaving bodily heirs.

Of course, if the three first takers, as contended by the appellants, received only one gift in joint tenancy measured by the life of the longest liver, and if the three first takers are to be regarded as a class under the previous decisions of this Court, then they would all constitute only one donee for the life of the longest liver, in view of the right of survivorship given under the will, and the bodily heirs of Carrie L. would constitute the second donee since both John and Mary had died without

bodily heirs. If Carrie L. only received a life estate in the light of the foregoing facts, then her warranty deed to J. C. Whetstone on November 21, 1930, would have vested in him only the remainder of her life estate, which would have expired at the date of her death on August 11, 1948, leaving the remainder in fee to the appellants. But if she received a fee simple title to a one-third interest in the land when the will became effective, and thereafter acquired the shares of John and Mary respectively by reason of their deaths occurring prior to the deed to J. C. Whetstone, at a time when neither of them had bodily heirs, then the deed from Carrie L. to the said J. C. Whetstone would have conveyed the land to him in fee.

We have found no case among our decisions which provides for as many different contingencies as are provided for in Clauses (1) to (10) inclusive of the will in the instant case. In attempting to determine the effect of this will we are not troubled with the rules of construction to be applied to ambiguous clauses in a will. The various provisions thereof are clearly expressed as to what the testatrix intended to say and as to what she meant by what she did say. The problem here is as to what is the legal effect of her clearly expressed intention when the will is considered in all of its parts, and as a whole.

We have heretofore quoted the so-called two-donee statute in full, Section 2436, Code of 1892, which was in effect both at the time this will was executed and when it took effect. We shall now quote other sections of that Code which were likewise in effect at that time.

Section 2435 provides: "Every estate in lands granted, conveyed, or devised, although the words deemed necessary by the common law to transfer an estate of inheritance be not added, shall be deemed a fee-simple if a less estate be not limited by express words, or unless

it clearly appear from the conveyance or will that a less estate was intended to be passed thereby.''

Section 2441, so far as the parts pertinent here are concerned, provides: ''All conveyances are devises of land made to two or more persons, * * * shall be construed to create estates in common, and not in joint-tenancy or entirety, unless it manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint-tenancy or entirety with the right of survivorship; * * * .''

Section 2446, entitled ''The rule in Shelley's case abolished'', provides that : ''A conveyance or devise of land or other property to any person for life, with remainder to his heirs or heirs of his body, shall be held to create an estate for life in such person, with remainder to his heirs or heirs of his body, who shall take as purchasers, by virtue of the remainder so limited to them.''

And Section 2448 provides, among other things, as follows: ''Every contingent limitation in any conveyance or will made to depend upon the dying of any person without heirs or heirs of the body, * * *, shall be held and interpreted as a limitation, to take effect when such person shall die not having such heir, * * * living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared on the face of the instrument creating it.''

Beginning with the Revised Code of 1857 and continuing until the Two Donee Statute of this State was omitted in 1930, there is no statutory provision which embodies the common law rule which required the vesting of title under a will to be within the lives of persons in being (without regard to number) or within twenty-one years and ten months thereafter. During the period aforesaid a person was allowed to make a conveyance or

devise of lands "to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, indefault thereof, to the right heirs of the donor in fee simple". It has been immaterial so far as the two-donee statute was concerned during that period as to how long a succession of donees then living, not exceeding two, may live. It has only been required that the succession of donees under a will must be then living, and that they shall not exceed two, and without regard to how long either of the two successive donees may live; and during the period aforesaid it has been permissible so far as that statute was concerned for land to be devised "to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee simple."

Since our statute was in derogation of the common law, and so materially changed the common law, the rights of the parties in the case now before us are not to be determined by what may have been said in our decisions about what the common law rule was, or is, or by quotations from text writers, but by what has been decided in our own cases as to when a will does or does not violate the two donee statute of this State, in force from 1857 to 1930. There is enough apparent confusion in our own cases, without, the confusing provisions of the two donee statute with the common law rule against perpetuities, to engage all of the time that can reasonably be devoted to the interpretation of the legal effect of the language employed in the will now before us. It was stated in the December 1956 issue of the Mississippi Law Journal, in an article by Donald B. Patterson dealing with both the common law rule against perpetuities and the Mississippi Two Donee Statute, that "there has never been a period in the history of the statute when the court has held firmly to any one construction. The earlier decisions seem to support the view that the

twenty-one year period (under the common law) was un-
affected by the statute while the later cases seem to sup-
port the view that the twenty-one year period was elimi-
nated by the statute. No decision has ever expressly
overruled a prior decision, but the later cases might be
interpreted to have overruled by implication the cases
supporting the common law period of twenty-one years
(and ten months)." The author of the article concludes
that "the cases dealing with the statute in regard to
perpetuities is nothing short of a study in confusion",
and that there are three possible results that may follow
from our decisions construing the present statute: "(1)
that it has nothing to do with perpetuities at all and is
simply a statutory substitute for the fee tail which was
abolished by the first clause of the statute; (2) that it
is a statutory re-enactment of the common law rule; (3)
that it is a complete substitute for the common law in
that the period is only measured by two lives in being,
and the twenty-one year (and ten month) period is ab-
rogated.

But be that as it may, the demurrer to the amended
bill of complaint in the instant case was sustained on the
sole ground that the provisions of the will in question
were violative of the two donee statute, Section 2436,
Code of 1892, and that therefore the three first-takers
were given a fee simple title instead of a life estate to
them as a class in joint tenancy measured by the life of
the longest liver, and the sustaining of the general de-
murrer likewise rejected the theory of the appellants
that in any event they were entitled to a five-sixths
interest in the land in controversy as set forth under the
discussion in this opinion of Clause (3) of the will;
and we shall therefore confine this opinion to the issues
presented to the chancellor and to this Court on appeal,
and without reference to the common law rule against
perpetuities which required the vesting of the fee simple
title within the lives of persons in being (without regard

to their number) and twenty-one years and ten months thereafter.

Directing this opinion now to the provisions of the will, numbered as clauses (1) to (10), inclusive, as set forth in the fifth paragraph of this opinion, the clauses of primary importance are numbered (1), (3) and (5).

Clause (1) devises and bequeaths all of the real estate of the testatrix, equally to her son John C. Sims, and her daughters Carrie L. Sims and Mary Sims, in common, it being apparent that the concluding words of this clause "as long as they remain single" relate only to the 10 acres of land including the dwelling, barn, outhouses and orchards, but not including the negro cabins or the remainder of the plantation other than the 10 acres mentioned in clause (2) of the will.

Clause (3) provides in substance that if one of the three devisees should die without leaving bodily heirs his or her share should go to the survivors, or if two of them die without bodily heirs the land should go to the survivor.

Clause (5) provides in substance that if either of the said three devisees shall die leaving bodily heirs, the said heirs shall take the deceased parent's share.

While Clause (2) deals primarily with the ten acres and provides that upon the marriage of either of the three devisees, the two remaining unmarried may select the said ten acres to be exclusively owned by them, and that if another of them shall marry the ten acres should go exclusively to the one remaining single, it further provides that if all three should marry then the ten acres shall again be the common property of all three. And in either case the remaining land shall be the common property of all three, whether married or single. Clause (2) also has some bearing on the question of whether the testatrix intended for the entire plantation to be kept intact as a home for each of the three de-

visees as long as any of them remained single, or only intended that the ten acres should be kept and used for that purpose, and also has some bearing on her intention as to the nature and character of the estate that was being devised to each of them.

Clause (4) did not become operative since John C. Sims did not survive both of his sisters. Clause (6) did not become operative, since the survivor and last of said three devisees left bodily heirs. Clause 7 did not become operative for the reason that the survivor of the three devisees died testate, and also leaving bodily heirs, and neither of the other two left bodily heirs. Clause (8) could not take effect because all three of the devisees did not die leaving no bodily heirs. Clause (9), which reads, "but if the survivor die intestate, said land shall go to W. R. Sims if then living", and by which we think that the testatrix clearly meant that if the survivor die intestate *leaving no bodily heirs* the land should go to W. R. Sims if then living. As heretofore stated she died testate and left bodily heirs. And for the same reason we think that Clause (10) did not become applicable to the situation presented.

██ Before further discussing Clauses (1), (3), and (5) of the will, as outlined in the fifth paragraph of this opinion, it should be now observed that with the exception of the last clause in the first sentence of Clause (2) and the last sentence of the said clause, Clauses (2), (4), (6), (7), (8), (9), and (10), as outlined in the fifth paragraph of this opinion, are important only on the question of whether or not the executrix undertook to, and did, give and devise her real estate in fee tail, so that by Section 2436, Code of 1892, the estates so devised were converted to estates in fee simple. We recognize the well settled rule that in construing a will it is the duty of the court to ascertain from the language of the instrument as a whole the dominant purpose and

intention of the testator or testatrix, and to then enforce that intention, *provided the same is lawful.*

In now construing Clauses (1), (3), and (5) of the will, we shall first deal with the contention of appellants that the will created either a life estate for the life of the longest liver in favor of the first takers of the land, John, Mary, and Carrie, or created a class gift for the life of the longest liver.

In the case of Redmond v. Redmond, 104 Miss. 512, 61 So. 552, the testator, Redmond, provided in his will, among other things, that "I devise and bequeath to my four sons, Robt., Jerry, Squire and Jason Redmond, and my three daughters, Martha Jane Redmond, Frances Binforth and Elizabeth Sanford *during their lives,* equal shares in the following real and personal estate: (describing it) and in the event of the death of Robert, or either one of my seven children named herein, then the property devised to him shall go to my remaining children to be equally divided between them, it being my desire and intention that my property shall pass over to my living children, *and after the death of my last child,* then the property devised shall go to his children, and if he or she has no children, then the property is to be equally divided among my grandchildren living." (Italics ours). In a codicil to the will, he wrote: "And at the death of any one or more of my seven children, his or their part of the property, real and personal, shall be equally divided between my surviving children, *and after the death of my last child,* whether he has children or not, the property must be equally divided among all my living grandchildren, and it is my desire that this codicil be annexed to and made a part of my last will and testament as foresaid, to all intents and purposes." (Italics ours). In the Redmond case the Court said: "Mr. Redmond gave the property he mentions to his seven children for their lives. When all of them shall die

—that is, when the last survivor dies—it goes to all of his living grandchildren in equal parts. Each of his seven children received a life estate as soon as he died. He did not intend that any of his grandchildren should receive any part of the property so long as any of his seven children were living. He intended that the property should remain in the possession of and enjoyment of his children named and of the survivors of them till the last died, and he therefore provided that at the death of each, his or her share should be equally divided among the survivors. He made one devise to all of his children—one gift to all—to extend as long as the life of the longest liver. * * * It was Mr. Redmond's purpose that his seven children named, and as each one shall die, the survivors should own and use the property during their lives and until the death of all of them. He desired that so long as any of the seven lived on the property (it) should belong to such of them as were living. And then at the end, when all of his children shall have died, the property goes to his grandchildren, his right heirs, in fee simple.''

The Court said elsewhehre in its opinion that: ''We do not see that Mr. Redmond's will is in violation of the statute of this state against perpetuities (meaning the Two-Donee statute). There is not a succession of donees in the devise to his seven children. The property is given to all of them together. There is one gift. The estate in the property disposed of is a life estate. The term of this life estate is the length of the life of the longest liver. This is not a devise of all of the property to one child for life, and at his death to another child, and so on successively to the end. The life of each child is not to be counted in the succession of donees, but only that of the longest liver.''

The will in the case at bar is distinguishable from the Redmond case in that if John Sims, when he died on

June 23, 1900, or Mary when she died on March 3, 1901, had left bodily heirs, his or her one-third interest in the land is common would have then gone, under the will, to their bodily heirs as tenants in common, in fee simple, instead of going to the survivors of the named devisees, as in the Redmond case. In such an event the bodily heirs of John Sims or Mary Sims would not have had to wait to receive their estate in the land until the death of Carrie L. Sims Carter on August 12, 1948, she being the survivor of John, Mary, and Carrie Sims. Moreover, Mary and Carrie upon the death of John with bodily heirs would not have in that event received the whole estate as long as they both lived, and Carrie, the survivor of the three first takers, would not have received the whole estate for the remainder of her life, with remainder to her bodily heirs, complainants in the present case, since John's bodily heirs would have received his one-third interest at his death in 1900, whereas Carrie, the survivor, did not die until 1948.

Particular attention is given to the Redmond case in this opinion for the reason that it is one of the main cases, if not the main case, relied upon by the appellants in contending that the three first takers under the will either received a life estate for the life of the longest liver or a class gift for the life of the longest liver. Clause (5) of the will expressly provided that if either John, Carrie or Mary shall die leaving bodily heirs, the said heirs shall take the deceased parent's share. Therefore, there was no provision in the will, or intention of the testatrix disclosed, that would have prevented the bodily heirs of John Sims, if he, the first to die, or Mary, the second to die, had left any at his or her death, from immediately taking his or her one-third interest in the land. In the Redmond case none of the grandchildren could have taken until the death of the last child of the testator.

Again, as to whether or not this is a class gift, it is to be noted that Clause (4) of the will provided that if John Sims should survive both his sisters, and if both shall die without bodily heirs, then the said John Sims should take exclusively the ten acres at the homesite, and that the balance of the land should be equally divided between him and his brother. But under the construction of the will as a whole, if either Mary or Carrie had been the survivor of the three first takers, they were to receive the whole estate, provided those predeceasing the survivor, or either of them, should not leave bodily heirs. In other words, the three first takers were not dealt with alike as a class under the will, but were dealt with as individuals. Moreover, the right of survivorship among these three children of the testatrix was a conditional right of survivorship, the survivorship of the share of those first dying being dependent upon their dying without leaving bodily heirs.

In the case of Byrd v. Wallis, et al, 182 Miss. 499, 181 So. 727, the Court held that under a will bequeathing specific legacies to named nephews and nieces and other relatives by blood and marriage and then a gift of the residuum to them and directing that it be divided ''equally among my relatives whose names are mentioned in this will'' was a gift to the named legatees as individuals and was not a ''gift to a class'' with the right of survivorship among the members thereof as joint tenants, particularly where testatrix directed that two specific shares should pass to the heirs of the body of the two named legatees instead of surviving to other named legatees. In the course of the opinion in that case it was stated: ''That the gift of the residuum cannot be legally interpreted as being one made to a class, with the right of survivorship among the members thereof as joint tenants, becomes still more apparent when we consider the fact that the testatrix provided in her will

that the specific legacies bequeathed to D. H. Johnson and Mrs. Louise Moss Montgomery, respectively, should pass to the heirs of the body of such legatees instead of surviving to the other named beneficiaries under the will; and from which it might reasonably be assumed that a like intention existed as to their respective shares in the residuum.'' In the instant case we do not have to merely assume that the testatrix intended that upon the death of either of the named devisees, leaving bodily heirs, the said heirs were to take the deceased parent's share because the will expressly so provides.

Strong reliance is placed by the appellants on the case of Shannon v. Riley, et al, 153 Miss. 815, 121 So. 808, wherein the testatrix had conveyed his farm lands to one of his sons as trustee, and in trust for himself and his three sisters, naming them, and his two brothers, naming them, for a period of ten years, and had provided that the said trustee should operate and farm the land through the ten-year period, dividing the income between himself and his sisters and brothers, and that if either of his sisters or brothers should die without leaving descendants of their own surviving them, then, in that event, the share or interest in said property of the one dying is, at the expiration of said period of ten years, to vest in the other beneficiaries of the trust *for life*, and, at their death, in their descendants in fee.

The conveyance further provided that at the end of the ten-year period the land was to be divided in kind among said trustee and his sisters and brothers, and that they should then have the right to take absolute control of their respective shares of said property with the right to all rents, incomes, and profits therefrom, ''for and during the term of his or her natural life only, and at the death of each of them the absolute title in fee to his or her share or interest in the said lands as divided, with all rents, income and profits therefrom, is to vest

absolutely and in fee in the child or children of the body of each of them respectively, or to the descendants of such child or children which may have in the meantime died.'' In other words, in that case the trust was to continue for ten years with the title vested in the trustee, and the other grantees were given no dominion or control of the land in the meantime. It was held in that case that the conveyance was to a class.

The Court said that '' * * * we have reached the conclusion that the donation *during the ten-year period of the trust* was to the beneficiaries as a class, and that in counting that period only one donee is involved in the count.'' (Italics ours).

The Court further said that ''During the existence of the period of said trust, all of said lands and personal property shall be kept together without the right of partition of same on the part of either of the beneficiaries thereof,'' and then it is provided for the land to be divided at the end of the trust period.

The facts and circumstances involved in the case of Shannon v. Riley, et al, supra, were such as to bring forth this comment from the author of the opinion therein ''but, if there were no precedent for this case in our books, we would not greatly hesitate to make one of it, * * * ''. The opinion then gave ''an approximation'' of what is meant by a gift to a class by saying: ''When there is a gift or grant to a number of persons, although one or all of them may be named, if the naming of them was intended merely as a matter of identification, and these persons are united or connected by some common tie, and it is clear that the donor was looking to the body as a whole or as a group, rather than to the members constituting the body as individuals, and that he intended that the group might fluctuate in numbers, so that, to preserve the group, if one or more of that body died during the period in question, the survivors should

take the gift between them, either in equal or in some other naturally related portions, the gift is to be construed as one given to them as a class.''

That case was referred to in the later case of Byrd v. Wallis, supra, and in Lee, et al v. Foley, et al, 224 Miss. 684, 80 So. 2d 765, wherein the question was again presented as to what is meant by a gift to a class, and where because of the particular facts and circumstances involved in Shannon v. Riley, supra, that case was treated as an exception to the general rule as to what constitutes a class gift.

Moreover, under the definition of such a gift, as herein before quoted from Shannon v. Riley, the case at bar may be further distinguished in that the survivors of the supposed class were not to take the whole estate as members of the class, except in the absence of bodily heirs of a deceased member thereof, since the bodily heirs of each member of the class, if any, were to take their parent's share, instead of the same surviving to the other named devisees.

In Lee, et al v. Foley, et al, supra, the Court held that ''A devise or bequest to a number of persons not individually named but all within the class described by testator, the numbers of which may increase or decrease, is, generally, a gift to a class and not to separate individuals. But if the devise or bequest is to named individuals, the gift is one to individuals, even though the named persons constitute a natural class. * * * The case of Shannon v. Riley, 153 Miss. 815, 121 So. 808, 75 A. L. R. 768, may seem to hold contrary to what we have laid down above. The Shannon case held that from a common sense view of the circumstances there unfolded a clear intent and purpose to treat and consider the beneficiaries as a unified class. * * *.''

. In Lee, v. Foley, supra, the Court said ''The principal question involved on this appeal is whether the will of

B. A. A. Foley made a gift to his children as individuals or as a class. * * * In the third paragraph of his will, the testator disposed of his real estate. He began the paragraph with these words: 'At the present time, my children are (naming his eight living children)' ''. After then reciting his ownership of certain real estate, he provided that it should not be sold or divided but that it should be held intact, after which the will states ''and at my death my children then living hold said property and receive only the rents,'' etc. Thereafter, in said paragraph 3, the will provided that ''as each of my children shall die, the right to use said rents, issues and profits shall become vested in my children surviving said deceased child or children, so that it is my will that the last surviving child of my children shall receive and become vested of an unqualified ownership of said property in fee simple.'' The Court held that the gift in that case was to the individual children of the testator as named in the will. The suit was brought by an adopted child of the testator, who was adopted sometime after the will was written, and the Court said, ''We do not reach the question whether Mary Foley Lee, as an adopted child, would take under this will if the will had been made after the adoption, and the gift had been to testator's children as a class. In that case the Court also said: ''The rule that a will speaks as of, or takes effect only upon, the death of the testator, relates to the effect and operation of the instrument, not to its construction. For purposes of testamentary interpretation, a will must be considered with reference to the circumstances existing at the time of its execution. 57 Am. Jur., Wills, Sec. 1209. The language of a will must be construed as of the date of its execution and in the light of the then surrounding circumstances. 57 Am. Jur., Wills, Sec. 1145. * * * .''

On the question of whether or not the devise here is to a class and created a life estate in the longest liver,

it must be noted that if John, the first of the three devisees to die, had left bodily heirs his share would have gone directly to them as tenants in common and in fee simple, whereas Mary and Carrie would have been left as joint tenants for the life of the longest liver of them in the same common property under the theory of appellants. It just can not be that some of the co-owners of a tract of land are tenants in common and the others joint tenants therein.

In the case of Wolfe, et al v. Wolfe, 207 Miss. 480, 42 So. 2d 438, the Court recognized that the common law favored joint tenancies, so that under a conveyance to two or more persons, not husband and wife, created a joint tenancy, and as to husband and wife an estate by entirety; and that to create an estate in common it was necessary to add explanatory words showing an intention to create such an estate, but that our statute, Section 834, Code of 1942, (Section 2441, Code of 1892), reverses the rule of the common law and provides that a conveyance to two or more persons, or to a husband and wife, shall be construed to create estates in common, unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or by entirety with the right of survivorship. In the course of the opinion the Court said "the distinguishing and most important incident of title by joint tenancy is the doctrine of survivorship, by force of which, upon the death of one joint tenant, the joint estate remains unimpaired with the survivor * * *. The parties were careful to expressly create and preserve that right. * * * It is impossible to have the right of survivorship in an estate in common. * * * ."

In the instant case, it is obvious that if John had left bodily heirs they would have taken their deceased parent's share as tenants in common, and in fee simple, and that upon the death of either of such bodily heirs

his or her share would have gone to the others as tenants in common unless devised prior to the death of the one dying. In that event John's share could not have survived to his sisters Mary and Carrie.

In Crump v. Phelps, et al, 207 Miss. 682, 43 So. 2d 105, the testatrix provided among other things that " 'I devise and bequeath to my daughters, naming them, and my son, naming him, all of the said real estate in this clause mentioned, subject however to the further restrictions in this clause hereinafter mentioned. But in the event of the death of either of my said daughters having no issue, then the share of such daughter in real estate referred to in this clause shall be equally divided between my surviving daughters and son, and the issue of those who may have died, the said issue to take by representation the interest to which the deceased parent would have been entitled; * * * .' We construe these provisions as vesting in the named devisees a defeasible fee simple title—that is to say a fee simple title subject to be divested, as to each devisee, upon her or his death without issue, provided there then be a surviving devisee or issue of deceased devisee, or both, * * *''. ·

In Cross, et al v. O'Cavanagh, et al, 198 Miss. 137, 21 So. 2d 473, the Court said: "A devise or bequest to a number of persons not named individually but all within the class described by the testator, the numbers of which may increase or decrease, is, generally, a gift to a class and not to separate individuals. Branton v. Buckley et al, 99 Miss. 116, 54 So. 850, L. R. A. 1917C, 527; Marx et al v. Hale et al, 131 Miss. 290, 95 So. 441; Balfour v. Wells et al, 183 Miss. 707, 183 So. 392, 184 So. 313. Conversely, a testamentary gift to named individuals, even though such individuals possess some characteristic in common, is not ordinarily a gift to a class. Byrd v. Wallis, et al, 182 Miss. 499, 181 So. 727.''

In Ewing et al v. Ewing, 198 Miss. 304, 22 So. 2d 225, the Court said: "The relation of life tenant and remainderman is not favored under our land title and economic system." The Court then pointed out the disadvantages of this relationship and then went on to say: "This does not mean, of course, that our law prohibits the creation of the relationship of life tenant and remainderman. It does mean, however, that we shall not strive for a construction to bring about such relation. If one wishes to create the relation, he can do so by apt words, or by necessary implications of those used. We are dealing with words which do not do that, but, on the contrary, by their common, ordinary meaning, convey and vest directly and immediately, an estate in common."

It is contended by the appellants, and correctly so, that the words "in fee simple" are used nowhere in the will of Mrs. Sims except at the end of clause (10) thereof. However, it is likewise true that no apt language is employed anywhere in the will for the creation of a life estate; the words "life estate" are not used anywhere in the entire will. We think that the will vested in the first takers a determinable fee simple title, subject to be defeated as to each share by the death of the devisee without bodily heirs.

In the case of Scott v. Turner, 137 Miss. 636, 102 So. 467, the Court said: "Without the qualifications and restrictions it would be a fee-simple absolute title; when considered with the qualifications, it is a fee determinable either upon the birth of issue to a childless child or upon the death of a childless child."

Since Carrie L. Sims did not marry until April 3, 1901, after John and Mary had died on June 23, 1900, and March 3, 1901, respectively, without leaving bodily heirs, none of the three first takers under the will had any bodily heirs either at the death of the testatrix in October 1899, or at the deaths of John and Mary, respectively, on the dates above mentioned.

In Hanie v. Grissom, et al, 178 Miss. 108, 172 So. 500, the Court held that a limitation over contained in provision in will that if any of children to whom testatrix left certain realty should die without children, his or her share in realty should go equally to testatrix' children that were living, was intended to take effect on death of child without issue at any time, whether before or after the death of testatrix, and hence children took a determinable fee subject to defeasance on their deaths without issue, leaving one or more of the other children surviving them.

In Reddoch, et al v. Williams, et al, 129 Miss. 706, 92 So. 831, the Court held that when a part only of a gift is invalid by reason of the rule against perpetuities, and the various parts are independent and separable, and the remote parts are not necessary for the carrying out of the common or general purpose of the instrument, those which violate the rule against perpetuities may be rejected, and those which do not upheld. In 21 R. C. L., p. 320, Section 54, the rule is announced that: "When a part only of a gift is invalid by reason of the rule against perpetuities, and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable, and the whole is adjudged void. But where the various provisions of a will are in fact independent, and not for the carrying out of a common or general purpose, those which are contrary to the rule may be rejected, and the valid provisions upheld. The test is whether the rejected parts may be expunged without essentially changing the general testamentary scheme."

In considering the ten clauses of the will in the instant case, which we have set forth in paragraph 5 of this opinion as aforesaid, we are unable to say that the various parts of the will are independent and separable, and that the remote parts are not necessary for carry-

ing out the common or general purpose of the instrument, so as to enable us to reject those which violate the two-donee statute and uphold all of those which do not. We think that the dominant scheme and purpose of the testatrix in the instant case was to entail the land under the will and to keep it in the Sims' family, even though it should become necessary for the title to finally vest in the brother, W. R. Sims, in fee simple. We may assume that she did not intend to violate the two donee or any other statute, but we think that nevertheless she undertook to devise her land in such manner as to future contingencies as to violate the two donee statute and to convert the estate devised to the first takers into a fee simple.

In Armstrong, et al v. Thomas, et al, 112 Miss. 272, 72 So. 1006, the Court held that where a testator by will devised lands to four daughters, with the provision that if any of them died without issue or bodily heirs, her part should go to the surviving sisters or sister, and declaring an intention that the daughters should share and share alike, in such case each of the four daughters took a fee, defeasible upon their deaths without issue, leaving one or more of the other devisees surviving them; the limitation over upon the death of each without issue to the survivor or survivors being a valid executory devise.

In Nicholson, et al v. Fields, et al, 111 Miss. 638, 71 So. 900, where the testator undertook to entail his land by his will, the Court held that "It is impossible to separate the several provisions of this will limiting the estate first granted * * * . His intentions are manifest —he undoubtedly intended to create a fee tail, and succeeded in doing so. He violated the rule against perpetuities, and thereby created 'an estate in fee simple' to his nephews. 'Although the construction to be put upon an instrument is not affected by the existence of the rule

against perpetuities, yet when there is a good, absolute gift, and the settlor or testator goes on, in an additional clause, to modify the gift, and by modifying it makes it, in part, too remote, the modification is rejected *in toto*, and the original gift stands.' The Rule Against Perpetuities, Gray (3rd ed.) Section 423; Hudson v. Gray, 58 Miss. 882. There is some confusion in the authorities on this subject in this and other states, but we believe that the rule announced above is the true rule, and that the chancellor was right in so holding.''

In Lazard v. Hiller, 145 Miss. 449, 110 So. 855, the Court said: ''The two donee statute, like the rule against perpetuities is not a rule of construction or a test by which to determine intention, 'its object is to defeat intention.' '' The words ''its object is to defeat intention'' are taken from Gray on Perpetuities, 3rd ed. par. 629, p. 497, which reads in full as follows: ''The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.''

In Scott v. Turner, 137 Miss. 636, 102 So. 467, this Court quoted the above mentioned rule and stated: ''This rule has frequently been quoted and referred to with approval in numerous opinions of this Court.''

The case of Everett v. Dockery, 203 Miss. 125, 33 So. 2d 313, cited by the appellants, dealt with a will which clearly devised life estates.

In the case of Stigler v. Shurlds, 131 Miss. 648, 95 So. 635, the devise in the will there under consideration was to the daughter of the testatrix, Mary Ella Lyons, ''during her life time'', and it was then provided that if she ''shall die without leaving any children, it is my·will

that all my property be divided equally between Kate Shurlds * * *, and the surviving children of Robert E. Shurlds, * * *. In the event my daughter, Mary Ella Lyons, shall leave children surviving her they shall inherit all of my property, but if they shall die without lawful issue, it shall then revert as hereinbefore provided (meaning to Kate Shurlds and the surviving children of Robert E. Shurlds)."

The suit in that case was brought by the daughter, Mrs. Mary Ella Stigler. She contended that the will violated the two donee statute in two particulars: First, that an estate in fee tail is devised; and, second, it makes a devise to a succession of more donees than is allowed under the second part of the two donee statute. The Court concluded its opinion by saying: "All that we are now called upon to decide, and all that we do decide, is that under this will the appellant only takes a life estate in the property devised."

In Federal Land Bank, et al v. Newsom, 175 Miss. 114, 161 So. 864, the only provision of the will of the testator, Dr. Thomas C. Newsom, that was involved before the court was as follows: "I give and bequeath to my son Bruce D. Newsom during his natural life and then to the heirs of his body the lands in Panola County, Mississippi (describing them)". The Court said that: "The first point in controversy between the parties is the contention by appellants that the will of Dr. Newsom is void under the so-called two-donee statute, Section 2436, Code 1892, in effect at the time of the execution of the will and at the death of the testator. There has, of course, never been any intimation anywhere that that statute made an interference with the right of a testator to devise lands to a certain person for life with remainder to the heirs of the body of that person. * * * Bruce D. Newsom was the life tenant named in the will, and as to this particular land the first donee thereunder, and

his two children, Mary Jane Newsom and Nancy Cavett Newsom, are the immediate remaindermen in fee. * * * The rule is that those portions of the will which violate the statute are rejected, while the valid portions are allowed to stand and are enforced, if practicably possible and so long as so to do will not defeat the dominant purpose of the will." No class gift was involved and the two-donee statute was clearly inapplicable. There was another point involved which is not pertinent here.

While there are expressions contained in the opinion in the above mentioned case in regard to disregarding contingencies provided for in the will which have not occurred, we are of the opinion that the decision in that case is not controlling in the case at bar, although it is to be conceded that some of the language used in that case and in several other opinions of this Court as to contingencies provided for and which did not happen, has given us a good deal of concern on the question of whether or not the will now under consideration should be adjudged as of the date when it became effective, and looking forward to the contingencies that could have arisen instead of backward to determine whether or not it violates the two-donee statute in the light of what has actually happened.

The appellees rely chiefly upon the cases of Nicholson v. Fields, 111 Miss. 638, 71 So. 900; Smith v. Muse, 134 Miss. 827, 98 So. 436; Scott v. Turner, 137 Miss. 636, 102 So. 467; Norfleet v. Norfleet, 151 Miss. 790, 119 So. 306; and Hudson v. Gray, 58 Miss. 882.

In Nicholson v. Fields, supra, the testator devised property to his three nephews, Joseph, James and John Nicholson, in equal shares subject to some contingent limitations. The pertinent provision of the will reads as follows: "I bequeath to my nephews (naming them) the following lands (describing them). This land is to go to the said Joseph Allen Nicholson, James L. Nicholson

and John Nicholson in equal undivided shares, on the following conditions: If they all have heirs of the body, each of them shall transmit unto his issue his share; But if one should fail to have issue of the body his share shall go to the survivor or survivors in equal parts; or if two of them shall fail to leave surviving heirs of the body, then the survivor shall inherit the whole property; but in the event they all fail to have heirs of the body, the entire property hereby bequeathed to them shall go to Thomas Howard Nicholson and James Milton Nicholson, if living, or to the heirs of their bodies, if any. Or, on failure of the heirs of the body in both lines, then to the next of kin, computed as before according to the rule in said law, but always preferring those bearing the name of Nicholson, in equal degrees of kinship.''

After quoting the foregoing provision of the will, the Court said: ''The question for us to decide, as we conceive it, is whether or not Section 2765 of the present Code, our statute embracing the rule against perpetuities, has been violated by the provisions of the will just quoted,—and, if so, what will be the legal effect of such violation? In other words, who will take the land in controversy?''

The Court was referring to Section 2765 of the Code of 1906 which is an exact rescript of Section 2436 of the Code of 1892, which controls in the decision of the case at bar. The Court went on to say that ''after bequeathing a fee simple estate, the testator immediately proceeded to annex conditions and limitations to the estate devised. * * * There is no sort of doubt about the intention of the testator. His intention, clearly expressed, was to entail the estate granted to his three nephews. Did he succeed in evading the last clause of Section 2765 of the Code? He devised the land to three donees 'in equal undivided shares,' and then he desired that if either one of these three donees should die without is-

sue, his undivided share should go to the two living donees, but if two of the donees died without issue the survivor would then 'inherit the whole property'. So, we have 'a devise of lands to a succession of donees then living' exceeding two.'' The above last quoted language was sufficient to decide the case, and to hold that the will as to the limitations reducing the fee simple estate first devised was invalid as being in volation of the two-donee statute. But the Court went on to say: ''But this is not all, the will goes a step further, and provides 'in the event they all (meaning the three nephews) fail to have heirs of the body, then the entire property hereby bequeathed to them shall go to' his grandsons, etc. It is impossible to separate the several provisions of this will limiting the estate first granted to the nephews of the testator without making a will for the deceased. His intentions are manifest—he undoubtedly intended to create a fee tail, and succeeded in doing so. He violated the rule against perpetuities, and thereby created 'an estate in fee simple' to his nephews.

'' 'Although the construction to be put upon an instrument is not affected by the existence of the rule against perpetuities, yet when there is a good, absolute gift, and the settlor or testator goes on, in an additional clause, to modify the gift, and by modifying it makes it, in part, too remote, the modification is rejected in toto, and the original gift stands.' The Rule Against Perpetuities, Gray (3d ed.) section 423; Hudson v. Gray, 58 Miss. 882.

''There is some confusion in the authorities on this subject in this and other states, but we believe that the rule announced above is the true rule, and that the chancellor was right in so holding.''

While no case has come to our attention in the study of the briefs of counsel or from our own research, which involves the same factual situation as is presented

in the instant case, we are of the opinion that the case of
Nicholson v. Fields, supra, is more similar to the case
now before us than is any other case cited in the briefs,
or referred to in the opinions of the court in the cases
cited in the briefs. As was said in that case the first
clause of the will devised to the devisees a fee simple
title. Such is the case here when we eliminate from
Clause 1 of the will now under consideration the words
"as long as they remain single", which words as herein-
before stated had reference only to the 10 acres referred
to in Clause 2 of the will.

In the case of Smith v. Muse, supra, the testator de-
vised his property in these words, 'equally between my
said wife and all my children * * *, share and share alike,
and should any of my said children die leaving no heirs
of their body surviving them, or descendants of such
heirs, then it is my wish and will that the portion of
my estate bequeathed to any such shall revert and go to
the survivor of my said children, and my said wife, in
equal shares". This Court held that this clause in the
will was void on the ground that it violated the two donee
statute, and that the widow and children took the estate
in fee.

In the case of Scott v. Turner, supra, the testator de-
vised the land to all of his children who should be living
at the end of 20 years and provided that if any that may
have died shall have left children or grandchildren sur-
viving them then the estate should be divided into six
equal shares and one of the said share given to the
children of each of the children or descendants of a
deceased child, each family of children taking an equal
interest without regard to their number. It was further
provided that if any of the children of the testator shall
have died without issue, then the number of shares are
to be reduced proportionately and the shares or interest
of the child or children dying without issue shall revert

to the estate of the testator and go to the children of the sisters or brothers, or to such sisters and brothers themselves if such have no children, to be held by such childless brothers and sisters in favor of the descendants of the testator in the event of their dying without issue.

It was contended in that case that the three childless children were devised life estates for the life of the longest liver, and that if they were childless at the time of their death their shares were to go to the other grandchildren of the testator or their descendants. The chancellor construed the will to mean that upon the death of the first childless child one-fifth of the property devised to him went in fee to each of said grandchildren per stirpes. One-fifth went to each of the two surviving childless children, who held it for life subject to the executory devises to the grandchildren and their descendants, and upon the death of the second childless child one-fourth of his estate went to each of the representative branches of the grandchildren per stirpes and one-fourth to the sole remaining childless child to be held by him for life. The Court here reversed the chancellor and held that the will violated the two donee statute; that in regard to the childless children "the first one of them to die represents the first donee. At his death 1/5th of the estate devised him goes to each of the surviving childless children, subject to the same conditions and held in the same way. The same thing happens upon the death of the second childless child. One-fourth of the original property devised him goes to the sole surviving childless child, likewise 1/4th of 1/4th of the property of the first dying childless child goes to the sole surviving childless child under the terms of the will. Not until the death of the last surviving childless child will the entire estate devised to the childless children finally vest in fee."

The Court distinguished this case from the Redmond case on the ground that in the Redmond case the testator

gave his 7 children an estate measured by the life of the longest liver, which was the case in Henry v. Henderson, 103 Miss. 48, 60 So. 33.

In Norfleet v. Norfleet, 151 Miss. 790, 119 So. 306, the testator, under Item Four of his will, devised land "to my three sisters and two brothers, share and share alike (naming them). But if either of my said sisters or brothers should die without leaving descendants of their body surviving them, then, in that event, the share or interest of said sister or brother so dying without leaving descendants surviving is to vest in her or his brothers and sisters, share and share alike, the descendants of any deceased sister or brother to take the share of its parents." Therein the Court said:

"By the first clause of item four, the testator devised his residuary estate * * * to his three sisters (naming them), and his two brothers (naming them), share and share alike. Under that clause of the will, the testator's undivided one-sixth interest in the land involved was devised in fee to his three sisters and two brothers, share and share alike. * * * However, by the second clause of item four of the will the testator undertook to limit the fee so devised by providing that, if either of his sisters or brothers should die without leaving issue surviving him or her, the share or interest of such sister or brother should vest in his or her surviving brothers and sisters share and share alike, the descendant or descendants of any deceased brother or sister to take the share of their parent.

"We think it plain that clause two of item four comes within the condemnation of our two donee statute (section 2765, Code of 1906; section 2424, Hemingway's 1927 Code), Smith v. Muse, 134 Miss. 827, 98 So. 436; Hudson v. Gray, 58 Miss. 882. By that clause, taken in connection with the first clause of item four, although the land was devised to a succession of donees then living, the num-

ber of donees exceeded the limit fixed by the statute—two. There were five instead of two. The testator undertook, in the second clause, to cut down the fee devised by the first clause, by providing that the estate granted in the first clause should be defeasible during the period from the date of the testator's death until there should be left only one surviving brother or sister, during which period the fee in the share given each brother or sister was subject to be defeated upon his or her death without issue. Smith v. Muse, supra, is conclusive of this question. The controlling principle in that case manifestly controls in the present case.

''The result is that the first takers, the five surviving brothers and sisters of the testator, took the testator's undivided one-sixth interest in the lands involved in fee.''

In Hudson v. Gray, supra, the testator devised his estate to his four children to be equally divided between them. There was a codicil which read: ''It is my desire and will that if any of my children shall die without any legal male descendants, then the property to which they may be entitled under the second item of my will shall go to and be distributed among my then surviving children share and share alike.'' The Court said: ''The estate here limited may be held by each one of the children of the testator (four in number) in succession and the limitation as to the land is therefore void, and William H. Gray (one of the children) took under the will a fee simple.''

Compare the cases of Wallace v. Wallace, 114 Miss. 591, 75 So. 449, and Liberty Bank v. Wilson, et al, 116 Miss. 377, 77 So. 145, as to their bearing on whether or not a fee or a life estate was devised to the three first takers under the will here involved.

It is correctly pointed out by the appellants that in the cases of Nicholson v. Fields, supra; Smith v. Muse,

supra; Scott v. Turner, supra; Norfleet v. Norfleet, supra; and Hudson v. Gray, supra, there was no power of disposition granted to any of the named devisees in either of the wills involved therein, but it should be noted that in the instant case the power of disposition was granted only to the survivor of the three first takers, and then only on condition that such survivor should leave no bodily heirs, and that it was elsewhere provided in the will in the instant case "if the survivor die intestate said lands shall go to W. R. Sims if then living, but if he be then deceased it shall go to my heirs in fee simple." As hereinbefore stated the survivor did not die intestate and she left bodily heirs.

It is also true that in none of the cases last above mentioned does the will provide that in the event either of the devisees mentioned in those wills should die leaving bodily heirs that the title was to vest in such bodily heirs instead of in the surviving devisee or devisees.

However, no mention was made in the opinion of the Court in either of those cases that no power of disposition was granted or that the will in either case failed to provide that in the event that either of the devisees should leave bodily heirs the title was to go to such heirs, as was provided for in the instant case. In other words, no significance was given in either of those decisions to the failure of the testator to grant unto the devisee the power of disposition, nor to their failure to provide for the vesting of the title in bodily heirs in the event the devisees should die leaving bodily heirs. Those decisions had the effect of declaring that where a testator violated the two donee statute, by entailing the property or otherwise, the estate devised would be deemed a devise in fee simple.

Adverting briefly to our discussion of whether or not the three first takers were devised the land as a class gift in joint tenancy for the life of the longest

liver of them, it is to be observed that we omitted citing the case of Marx, et al, v. Hale, et al, 131 Miss. 290, 95 So. 441, wherein it was held that a bequest or devise in a will to a number of persons not individually named, but all answering a general description, is a ''gift to a class'', and not to individuals; but that where there is a devise or bequest to certain persons by name and the exact amount to be taken by each is specified, then this is a devise or bequest ''to individuals'', and not to a class. We think that in the instant case the exact amount to be taken by each of the first takers is specified. The devise to them under Clause (1) of the will is ''equally to my son John C. Sims and my daughters Carrie L. Sims and Mary Sims in common * * *;'' that is to say, that by this clause of the will ''equally'' and ''in common'' mean that they were to get one-third of the land each, and in common. And when the testatrix undertook to cut down the fee thus first devised to them in the will by entailing the property in the manner condemned under the decision of Nicholson v. Fields, supra, the estate sought to be devised to each of these first takers was converted into estates in fee simple by reason of the first part of the two donee statute, Section 2436, Code of 1892, and the subsequent contingencies provided for under subsequent clauses of the will violated the second part of the said two donee statute; that the devise made to these three first takers was valid and must be allowed to stand under the authorities hereinbefore cited; that the deed from Carrie Sims Carter to J. C. Whetstone on November 21, 1930, was effective to convey to him the one-third interest in the land that was devised to the said Carrie Sims Carter (nee Carrie L. Sims) in fee simple, together with whatever interest she may have acquired from John C. Sims and Mary Sims by inheritance as an heir at law of them at the time of their deaths on June 23, 1900, and March 3, 1901, respectively.

The pleadings do not disclose whether or not their brother, W. R. Sims, was then living, or as to who, if he was not then living, are his heirs at law. Neither W. R. Sims nor his heirs at law, if any, are parties to this suit.

Hence we merely construe the will of the testatrix, Mrs. Celete F. Sims, as being in violation of the two donee statute for the reasons hereinbefore stated, and as was held by the chancellor; and that the warranty deed from Carrie Sims Carter to J. C. Whetstone was effective to convey unto him her fee simple title to a one-third interest in the land, together with whatever interest or title that she may have acquired by inheritance from John C. Sims and Mary Sims at their deaths, respectively, as one of their heirs at law and next of kin, they both having died long prior to the execution of the deed to the said J. C. Whetstone, as aforesaid. Both the affirming and the dissenting judges agree that no class gift measured by the life of the longest liver was created under this will.

We leave open the question as to what interest or title Carrie Sims Carter (nee Carrie L. Sims) may have acquired from her brother, John, and her sister, Mary, upon the death of each of them, respectively, since the case was decided in the trial court on demurrer, and the pleadings do not disclose whether or not W. R. Sims is still living, or as to who else may be the heirs at law of John C. Sims and Mary Sims.

From the foregoing views it follows that we affirm the decree of the chancery court in sustaining the demurrer and dismissing the bill of complaint upon the complainant's having declined to plead further.

Affirmed.

*Roberds, Holmes, Arrington, Ethridge* and *Gillespie,* JJ., concur. *Hall, J.,* took no part.

LEE, J., dissenting:

In construing this will, the intention of the testatrix of course controls. The object of the construction is to ascertain her intention and give effect thereto. If possible, effect must be given to her intention. See cases listed in Volume 14, Mississippi Digest. Wills, Section 439.

The intention of the testatrix, when ascertained, controls unless it is invalid under the law. Boxley v. Jackson, 191 Miss. 134, 2 So. 2d 160. If reasonably possible, the Court will so construe an ambiguous will as to render it not invalid under the rule against Perpetuities or the Two-Donee Statute. Bratton v. Graham, 146 Miss. 246, 111 So. 353.

The above rules recognize the right of the owner of property to make disposition as she sees fit, unless such disposition is prohibited by law.

Because of the difference in purposes and relationships, the decided cases construing wills, even though they are legion, oftentimes are not helpful in concrete instances. Of course the cases must not be disregarded. This Court in Henry v. Henderson, 103 Miss. 48, 60 So. 33, was well aware of this difficulty when it said: "The sole object of construing a will is to arrive at the intention of the maker; and this intention must be gathered from the whole instrument, construed in the light of the circumstances surrounding the maker at the time of the execution thereof. While it may be true that 'no two wills probably ever were written in precisely the same language throughout, and probably no two testators ever did die under precisely the same circumstances in relation to their estate, family, and friends,' so that technical rules of law and adjudicated cases are not of as great assistance in the construction of a will as they are in the construction of some instruments of a different character, still they are not to be disregarded

altogether, but *should be followed, unless to do so would do violence to the clear intent of the testator.*" (Emphasis supplied.)

It is clear to me, from a study of this instrument, that the intended primary beneficiaries of the testatrix' bounty were her three unmarried children, John C., Carrie L. and Mary Sims, and their children—her grandchildren —if they had any.

Item 1 of the will of Mrs. C. F. Sims, divided into two paragraphs, presents the problem to be solved. The majority opinion undertakes to parse this item, and divides it into ten clauses. Lest this arrangement may give undue prominence by position to certain clauses, I am setting the item out as it appears in the record to wit:

"I devise and bequeath all my real estate as follows, *equally to my son John C. Sims and my daughters Carrie L. Sims and Mary Sims in common as long as they remain single;* but upon the marriage of either of them, ten acres of said land including the dwelling, barn, out houses and orchard but not including the negro cabins to go exclusively to those remaining single, & they may select the said ten acres to be exclusively owned by them, if another of said three devisees shall marry then said ten acres shall go exclusively to the one remaining single, but if all three should marry then said ten acres shall again be the common property of all three. *And in either case the remaining land excepting the said ten acres shall be the common property of all three, whether married or single.*

"If either of my said three devisees shall die without leaving bodily heirs living at the death of said devisee then said real estate shall go to the survivors, or if two of them die without bodily heirs then the said land shall go to the survivor, provided that if my son John C. Sims shall survive both his sisters, and they both shall die without bodily heirs, then the said John C. Sims

shall take the said ten acres, above mentioned as his exclusive property, and the balance of the land shall be equally divided between my two sons John C. Sims and W. R. Sims; *and provided further that if either of my said three devisees John C., Carrie L. or Mary shall die leaving bodily heirs, the said heirs shall take the deceased parents share* and upon the death of their survivors and last of said three devisees leaving no bodily heirs, if there shall at that time be bodily heirs living, of one or both of the three devisees, first dieing then said last of said three devisees may devise his share, but if such survivor die intestate the share of such survivor shall go to the bodily heirs of those leaving bodily heirs; upon the death of all three of said devisees leaving no bodily heirs living at their deaths, the survivor may devise said land, but if the survivor die intestate said land shall go to W. R. Sims if then living, but if he be then deceased it shall go to my heirs in fee simple''. (Emphasis supplied.)

It will be seen that, in the first paragraph of this item, Mrs. Sims placed her property in two divisions, namely, ten acres where the home was, and the remaining land. She devised the ten acres to her unmarried children, John C., Carrie L. and Mary, as long as they remained single. Undoubtedly her purpose was to assure a home, as long as they lived, for those who might remain single. But as to the residue of the land, she provided that: ''And in either case the remaining land excepting the said ten acres shall be the common property of all three, whether married or single.''

But that devise was limited in the second paragraph of the above section because she said: ''and provided further that if either of my said three devisees John C., Carrie L. or Mary shall die leaving bodily heirs, the said heirs shall take the deceased parents share.'' In other words, while the land other than the ten acres was

devised to all three as common property, yet if either of the three beneficiaries died leaving bodily heirs, the share of such beneficiary, as to that land, passed to such bodily heirs. Carrie L. (Mrs. Carter) died, leaving five bodily heirs, the appellants in this case, and to me it is inescapable that her one-third interest therein passed to her children.

Another provision in the second paragraph of Section 1 undertook to deal with the property in case these beneficiaries did not have bodily heirs at the time of their deaths. In that event, the land would go first to the two survivors, and then to the last survivor; and if John C. should survive his two sisters, then the ten acres would be his exclusive property, and the other land should be divided equally between him and his brother, W. R. Sims. Other contingencies are thereafter also provided for, together with the method of disposition in the absence of bodily heirs of the devisees.

Since the second paragraph of Item 1 is divided into three independent sections, set off by semicolons, I think that the intent and purpose of the testatrix appear in their true perspective if, immediately following the last words of the first paragraph, to wit: *"And in either case the remaining land excepting the said ten acres shall be the common property of all three, whether married or single"*, these sections are transposed and arranged in their logical sequence as follows: *"and provided further that if either of my said three devisees John C., Carrie L. or Mary shall die leaving bodily heirs, the said heirs shall take the deceased parents share* and upon the death of their survivors and last of said three devisees leaving no bodily heirs, if there shall at that time be bodily heirs living, of one or both of the three devisees, first dieing then said last of said three devisees may devise his share, but if such survivor die intestate the share of such survivor shall go to the bodily

heirs of those leaving bodily heirs; if either of my said three devisees shall die without leaving bodily heirs living at the death of said devisee then said real estate shall go to the survivors, or if two of them die without bodily heirs then the said land shall go to the survivor, provided that if my son John C. Sims shall survive both his sisters, and they both shall die without bodily heirs, then the said John C. Sims shall take the said ten acres, above mentioned as his exclusive property, and the balance of the land shall be equally divided between my two sons John C. Sims and W. R. Sims; upon the death of all three of said devisees leaving no bodily heirs living at their deaths, the survivor may devise said land, but if the survivor die intestate said land shall go to W. R. Sims if then living, but if he be then deceased it shall go to my heirs in fee simple.'' (Emphasis supplied.)

In Federal Land Bank of New Orleans v. Newsom, 175 Miss. 114, 161 So. 864, it appeared that Dr. T. C. Newsom died testate on July 13, 1906, leaving the following will: ''I give and bequeath to my son Bruce D. Newsom during his natural life and then to the heirs of his body the lands in Panola County, Mississippi, described as Section 7, except the South half of the Southwest quarter, in Township 8, Range 9, comprising 560 acres more or less.'' The opinion said: ''There are subsequent portions of the will providing for contingencies, but since the contingencies mentioned have never happened and could not now affect the above specific devise, we omit any quotation of those provisions.'' When Bruce attained his majority, he married, and two children survived him at his death in 1928. The opinion said: ''There has, of course, never been any intimation anywhere that that statute (the two-donee statute) made any interference with the right of a testator to devise lands to a certain person for life with remainder to the heirs of the body of that person.'' Lazard v. Hiller, 145 Miss. 449, 110 So. 855, 112 So. 585,

was cited as so holding. The opinion then goes on to say that: "Bruce D. Newsom was the life tenant named in the will, and as to this particular land the first donee thereunder, and his two children, Mary Jane Newsom and Nancy Cavett Newsom, are the immediate remaindermen in fee. The fact that subsequent portions of the will, providing for contingencies which as to these two children have never happened, might make the will void as to those claiming under a state of facts brought about by the contingencies, does not in the slightest affect the right and title of the two children above named as the remaindermen in fee upon the death of their father, the life tenant. The rule is that those portions of the will which violate the statute are rejected, while the valid portions are allowed to stand and are enforced, if practicably possible and so long as so to do will not defeat the dominant purpose of the will. Reddoch v. Williams, 129 Miss. 706, 92 So. 831; Lazard v. Hiller, supra. The two children above named have now taken, therefore, as remaindermen, a fee-simple title under the will, as it was the principal purpose of the will that they should do, so far as they are concerned. Stigler v. Shurlds, 131 Miss. 648, 95 So. 635."

By the same reasoning, as set forth in the Newsom case, supra, I think the Court ought to say that Mrs. Carter, with bodily heirs, was actually a life tenant under the will and the first donee thereunder, and that her five children, the appellants here, are the immediate remaindermen in fee. By Section 2446, Code of 1942, cited in the majority opinion, it seems to me that such an estate was created.

The case of Reddoch v. Williams, 129 Miss. 706, 92 So. 831, cited in the majority opinion, recognizes the rule that, if the provisions of a will are independent, and some are valid and others invalid, under the rule against perpetuities, the invalid provisions may be re-

jected and the valid ones may be upheld. See also the quotation in Federal Land Bank v. Newsom, supra, to the same effect.

What I am contending for, namely, that the share of the parents, under the above provisions, descended to the children, if there were any, seems to be recognized by the majority opinion at Page 28 thereof, which says: "In the instant case, it is obvious that if John had left bodily heirs they would have taken their deceased parent's share as tenants in common, and in fee simple, and that upon the death of either of such bodily heirs his or her share would have gone to the others as tenants in common unless devised prior to the death of the one dying. In that event John's share could not have survived to his sisters Mary and Carrie."

The case of Federal Land Bank v. Newsom, supra, made reference to "subsequent portions of the will providing for contingencies" and then said, "but since the contingencies mentioned have never happened and could not now affect the above specific devise, we omit any quotation of those provisions." It also pointed out that, while those provisions might make the will void as to persons claiming under a state of facts brought out by the contingencies, this did not affect the right and title of the two remaindermen in fee upon the death of their father; and that the rule is that the provisions violative of the statute are rejected, while the valid portions are allowed to stand and are enforced, if practicably possible and so long as they do not defeat the dominant purpose of the will. Obviously the devise to Mrs. Carter with remainder to her children was valid. Assuredly it is "practicably possible" to let this provision stand; and its recognition will certainly "not defeat the dominant purpose of the will." On the other hand, it is clear that the testatrix intended that her grandchildren, if any, should be the ultimate beneficiaries of the bequests to their parents.

In the case of Henry v. Henderson, supra, where the Court was dealing with contingencies which did not arise, the opinion said: "Had the testatrix devised this land in express terms in Ditto for the life of Loraine there could be no question but that Loraine only should be counted in the succession of donees; *and, as events have determined, that, in effect, is what she did.*" (Emphasis supplied.)

In Shannon v. Riley, 153 Miss. 815, 121 So. 808, the instrument in question was attacked as being in violation of the two-donee statute, Section 2436, Code of 1892. Several cases were cited as upholding the conclusion which the Court reached. The opinion said: "But, if there were no precedent for this case in our books, we would not greatly hesitate to make one of it, for we maintain and hold that there is enough of enlightenment in our law to permit of a reasonable arrangement, such as is illustrated by this case, by which a family may be for a time preserved and its property saved— a proposition upon which natural equity and cultivated reason unite in commending it to our sympathetic and favorable consideration." In other words, the Court forcefully expressed its determination not to do violence to the clear intent of the testator, following, no doubt, the rule expressed in the first quotation from Henry v. Henderson, supra.

Many of the contingencies in the will of Mrs. Sims did not arise. Actually Mrs. Carter survived both John C. and Mary Sims, her brother and sister. I can see how, under Federal Land Bank v. Newsom, Shannon v. Riley, and Henry v. Henderson, supra, the will could be construed as vesting a five-sixths interest in Mrs. Carter, with remainder over to her four children. The weight of authority as to the time at which a will is to be construed seems to be somewhat at variance with the observations in those cases. For that reason I have

some hesitancy in contending the the appellants are entitled to this larger interest.

But, under the express terms of the will, as pointed out above, I am definitely of the opinion that the appellants, as the bodily heirs of Mrs. Carter, following her death, took in fee her one-third interest under the original devise.

*Kyle, J.,* joins in this dissent.