scious, and for the accomplishment of his purpose there had been sufficient time to lay the plan and select the weapon to carry it into execution. This instruction is taken from that portion of the charge of which the second assignment complains. It has even less merit than the first, for what the jury were told in the language of which it complains but followed the instructions in Commonwealth v. Drum, 58 Pa. 9, which have since been approved by this court in a multitude of cases.

On this appeal the Commonwealth well contends that the prisoner really made no defense at the trial. That he shot his victim under the circumstances recited is admitted, and he did not deny that he had said to two witnesses that he had returned from the theatre to the restaurant for the purpose of awaiting her return, that he might shoot her. If the court failed to dwell at length on the testimony of several witnesses which counsel for the prisoner seem to think was relevant and important, it was probably for the very good reason that there was nothing in it to help him. The fourth assignment does not seem to be pressed. The question raised by the fifth was passed upon adversely to the appellant in Commonwealth v. Tassone, 246 Pa. 543.

The assignments of error are overruled, the judgment is affirmed and it is ordered that the record be remitted for the purpose of execution.

---

# Patterson's Estate.

*Wills — Construction — Life tenant — Vested remainder — Contingent remainder—Named devisees—Death of devisee.*

Testator provided by will: "I give and devise......to my son," naming him, "for and during his natural life, and at his death, I devise the same to his child or children in equal parts in fee, and in default of such, then to my other children," naming three, "in equal parts in fee." All of testator's children survived him. The life tenant died without children, being pre-deceased by his sister,

one of testator's three children named in the above provision. It was contended by the two children of the testator who survived the life tenant that they were entitled to the remainder, to the exclusion of the children of their deceased sister. *Held*, the court did not err in decreeing that the two children of the testator surviving the life tenant were each entitled to one-third of the fund and that the remaining one-third be divided among the children of their deceased sister.

Argued Oct. 26, 1914. Appeals, Nos. 110 and 111, Oct. T., 1914, by Robert W. Patterson and Thomas H. Patterson, from decree of O. C. Allegheny Co., Sept. T., 1913, No. 391, distributing fund in Estate of Joseph Patterson, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. TRIMBLE, J., filed the following opinion:

Joseph Patterson died March 25th, 1868, testate, and by his will made the following devise, inter alia:

"Seventh. I give and devise......to my son, Joseph N. Patterson, for and during his natural life, and at his death, I devise the same to his child or children in equal parts in fee, and in default of such, then to my other children, Elizabeth H. Hazeltine, Thomas H. Patterson and Robert W. Patterson, in equal parts in fee."

By three other devises, similar in expression, he gave to his daughter, Elizabeth H. Hazeltine, and to his other two sons, Thomas H. Patterson and Robert W. Patterson, other portions of his estate.

The testator left to survive him the following:

First. (a) Hetty H. Patterson, his wife, who died April 9th, 1909;

(b) Elizabeth H. Hazeltine, daughter, who was born September ...., 1840, and died March 29th, 1891;

(c) Joseph N. Patterson, a son, who was born December 24th, 1843, and died April 5th, 1913, without issue;

(d) Thomas H. Patterson, a son, who was born March 1st, 1849, and is still living;

(e) Robert W. Patterson, a son, who was born December 28th, 1850, and is still living.

Second. Elizabeth H. Hazeltine had three children and died intestate, leaving two children and her husband surviving as follows:

(a) Her husband, Charles F. Hazeltine, who is still living;

(b) Esther H. Hazeltine, born April ...., 1864, and who married Charles S. Carstairs, from whom she was subsequently divorced, and thereafter married Felix F. Tuckerman, and who died January 15th, 1907, leaving to survive her husband, Felix L. Tuckerman, who is still living, and the following children, viz: Charles Hazeltine Carstairs, Carroll C. Carstairs, James Stewart Carstairs and Elizabeth Holmes Carstairs, who are living and of full age.

(c) Miss L. S. Hazeltine, born December 29th, 1867, and died February ...., 1882;

(d) Caroline M. Hazeltine, born September ...., 1873 (now Caroline H. Valentine), who intermarried with Abram S. Valentine, and is still living.

A petition was presented to this court under the Price Act for the sale of a portion of the land devised by the seventh paragraph of the testator's will to Joseph N. Patterson, for his life, and after all the interested parties were brought upon the record, the trustee, who was appointed to make the sale, consummated it. Joseph N. Patterson the devisee of the life estate having died on the 5th of April, 1913, the trustee filed its account, and one-half of the balance of said account is now before the court for its determination of the ownership thereof.

The question involved is whether a fee vested in Elizabeth H. Hazeltine, Thomas H. Patterson and Robert W. Patterson at the death of the testator under said paragraph of his will; or whether when this devise is considered in connection with the devises of the sixth, eighth and ninth paragraphs, the fee vested in the testator's

children as a class at the death of the first takes in default of issue.

This will was evidently written by a lawyer. It is expressed clearly in apt words. It is unnecessary to supply any words to discover the testator's intention. To hold that this is a devise to a class of persons at the death of the first taker, means that we must supply the words "survivor" or "survivors," or say that when the testator devised to his "other children" in the several paragraphs of the will, he intended to say "my surviving child or children." But when the testator used the descriptive words "my other children," if we say that these were the equivalent of "surviving child or children," it leads us to a point in the analysis of the will where "other children" refers to but one child, for, by the death of three in succession, but one was living, and to describe this one as "my other children," is surely an awkward way of saying "my surviving child."

Again if three of the children have issue and are deceased, and the fourth dies childless, what becomes of the fee of the land in which this fourth child has a life estate? If these were class devises who takes the fee? It must be the sister and brothers as remaindermen, and then so interpreted, his description of those who take the fee as "my other children" has a certain and sensible meaning, but if we say that "my other children" means the survivor or survivors living at the termination of the life estate, and there is no survivor, the absurdity proves that it is a false deduction.

It was very easy for the testator to say that this devise was to take effect at the termination of the life estate, and to vest in his child or children then surviving; and we believe that if it had been his intention that this devise should vest in a class of persons he would have used language which would have left no doubt about it. This will, which is in all other respects expressed with finical precision, will not be mutilated so as to give its words a meaning which is not apparent. If the whole

will indicates that it was the testator's intention that the estate devised should vest in a class of persons to be determined at the death of the first taker, the rules of law which aid in the construction of wills would not be invoked; but where that intention cannot be gathered from the whole will, it is our duty to apply the settled rules of construction and to interpret this will thereby.

In support of the affirmative that the devise is to vest in the testator's surviving child or children after the termination of the life estate, it is argued that the fee must vest in grandchildren, because Elizabeth H. Hazeltine, the daughter is now deceased, and that to give effect to the testator's use of the words "my children," we must say that the words include granchildren as well; but this is not the proper construction. It is not necessary to hold that the word "children" includes "grandchildren" at all, for, if the estate vested at the testator's death, it vested in all his children nominatim. Nor is there any significance favoring a class devise in the use of the term "at his death." It cannot be said that the testator willed that this devise would vest "at the death" of the first taker; but it is clear that the testator intended that when the first taker was deceased, his child or children, if any, should take the fee which had vested "at his death," and if the first taker had no "child or children" there was a remainder in fee in the testator's "other children": Bassett v. Hawk, 118 Pa. 94; Chew's App., 37 Pa. 23.

Nor can it be said that the word "then" is a temporary adverb, signifying the time when the fee would vest. It is a conjunction and is synonymous with "in that case."

Moreover when the testator named his children in whom the fee would vest in default of issue to the first taker, he showed clearly that he did not intend that this devise was to a class of persons.

In Williams v. Neff, 52 Pa. 326, quoting from page 333, the court says:

"There is no survivorship, for it is not given to his sons as a class, but to them and each by his own name; as the term sons simply identifies the individual persons meant."

And in Harrison's Est., 18 Pa. Superior Ct. 588, on page 593, it is said:

"When the devise is to a person by name, it is conclusive as to the intention of the testator that the person should take, and the intention of the testator being established, the subject of the devise or bequest will upon the death of the testator be good and available in favor of the issue, when the primary devisee or legatee has died during the lifetime of the testator."

The cases relied upon by counsel pressing this view of the case, are Woelpper's App., 126 Pa. 562, and Steinmetz's Est., 194 Pa. 611. But it is apparent that these cases are widely divergent from this case, because the testator plainly expressed that the fee should vest in the surviving members of the classes which were to be determined after the death of the owner of the life estate.

When we interpret the seventh clause of testator's will, standing alone, it is as near parallel to the case of Bassett v. Hawk, 118 Pa. 94, as will cases are likely to be. In that case the devise was as follows:

"To my son Daniel, to his use as long as he shall live and to his legal heirs, if he have any, at his death; if my son, Daniel, do not have any legal heirs at his death, then, and in that case......I will it to be given to my grandchildren, Charlotte, Mary and Columbus."

It was decided that the remainder was in abeyance until the decease of the life tenant, and that the contingency was not attached to the capacity of the remaindermen to take, but to an event independent of and not affecting either their capacity to take, or to transmit the right to their representatives. In reaching this conclusion the court relied upon Kelso v. Dickey, 7 W. & S. 279, and Chess' App., 87 Pa. 362.

Pennock v. Eagles, 102 Pa. 290, followed in Hyde v. Rainey, 233 Pa. 540, is to the same effect.

Many cases can be found in which it is held that the law favors vested estates rather than those which are contingent: Chew's App., 37 Pa. 23; Bradley's Est., 166 Pa. 300.

Our conclusion is that Joseph Patterson devised an estate for life to his son Joseph N. Patterson, the fee to the life tenant's children, if any, and if not, to the testator's other children nominatim. The owner of the life estate having died childless, the remainder which was vested in the testator's children at his death, became absolute, and distribution of the fund realized will be made to the children of Elizabeth H. Hazeltine, one third; Thomas H. Patterson, one third; and Robert W. Patterson, one-third.

The court decreed that of the fund realized one-third should be paid to Thomas H. Patterson; one-third to Robert W. Patterson, and one-third to the children of Elizabeth H. Hazeltine. Robert W. Patterson and Thomas H. Patterson appealed.

*Error assigned,* among others, was the decree of the court.

*J. M. Freeman,* of *Watson & Freeman,* with him *John Cadwalader, Harry F. Stambaugh,* and *Patterson, Crawford, Miller & Arensberg,* for appellants.

*E. W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *Henry C. Quinby, G. Plantou Middleton, John Blakeley,* and *John F. Valicant,* for appellees, cited: Kelso v. Dickey, 7 W. & S. 279; Hopkins v. Jones, 2 Pa. 69; Chess' App., 87 Pa. 362; Etter's Est., 23 Pa. 381; Busby's App., 61 Pa. 111; Pennock v. Eagles, 102 Pa. 290; Ferguson's Est., 31 Pa. Superior Ct. 422; Freeman's Est. (No. 1), 35 Pa. Superior Ct. 185.

PER CURIAM, January 2, 1915:

The decree appealed from is affirmed for the reasons stated in the opinion of Judge TRIMBLE.

---

# Scott, Appellant, v. Huston.

*Trespass—False representations—Purchase of shares of stock—Statement of condition of corporation—Prospectus—Nonsuit.*

In an action to recover damages for false representations alleged to have been made at the time of the purchase by plaintiff from defendants of certain shares of stock of a corporation, plaintiff based his right to recover on the ground that the defendants concealed from him the existence of an outstanding oil and gas lease upon approximately one-half of the land owned by the corporation, and on defendants' failure to disclose the price at which they had a short time previously purchased a large number of shares. It appeared that before purchasing the stock plaintiff examined the prospectus issued by the corporation, and visited the property and saw the oil and gas being produced; that after becoming a stockholder he was elected a member of the board of directors, in which capacity he continued to serve for a period of four years, at the expiration of which time, after unsuccessful efforts had been made to dispose of the property and the stockholders were required to advance money to pay taxes, he attempted to return his stock, which the defendants refused to accept. *Held,* the court did not err in entering a nonsuit.

Argued Oct. 26, 1914. Appeal, No. 4, Oct. T., 1914, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1911, No. 112, refusing to take off nonsuit in case of James Scott v. James A. Huston, David P. Black, James N. Jarvis and William S. VanDyke. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass for false representations. FRAZER, P. J., filed the following opinion:

The plaintiff in this action sought to recover from defendants damages for alleged false representations made