ANDERSON, et al. *v.* ANDERSON, et al.

No. 41406 June 13, 1960 121 So. 2d 393

*Ruth Campbell,* Yazoo City, for appellants.

*Johnson & White,* Lexington; *Bridgforth & Love,* Yazoo City; *Satterfield, Shell, Williams & Buford, Watkins & Eager,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by Mansfield Anderson and others, complainants in the court below, from a decree of the Chancery Court of Yazoo County rendered in favor of Ed Wilburn Hooker and others, de-

fendants in the court below, in a suit filed by the appellants as heirs-at-law of James Anderson, deceased, to establish their title to a remainder interest in and to obtain possession of 139 acres of lands situated in Yazoo County, which was owned by one James Anderson, a white man, who is referred to in the record as "James Anderson, the testator," to distinguish him from James Anderson, the father of the complainants and one of the devisees named in the will and codicil of the said testator, at the time of his death in 1872, and which was allotted and set apart to Edward Anderson as his separate part or share of the lands devised by the said "James Anderson, the testator," in his last will and testament and codicil to the said Edward Anderson and seven other children, named in said will and codicil, subject to the limitations and conditions therein stated.

In their original bill of complaint, which was filed by the complainants on November 14, 1955, the complainants sought to have cancelled as clouds upon their title the claims of the defendants to the lands described as Lot No. 3 of the lands owned by the said James Anderson, testator, at the time of his death, as shown on the surveyor's plat of said lands filed in the partition proceeding, Cause No. 981, in the chancery court of said county in 1878, and to have cancelled as clouds on their title claims of other defendants to the lands described as Lot No. 4, as shown on said surveyor's plat, as to which different questions of fact and of law were presented.

The two groups of defendants, however, filed special demurrers to the original bill on the ground that the bill was multifarious. The demurrers were sustained, and the complainants were directed to file separate bills as to each of the two tracts of land, Lot No. 3 and Lot No. 4. The complainants then filed two separate bills of complaint, one as to Lot No. 3, in which the appellees in this case were named as defendants, and one as to Lot No. 4, in which other parties were named as defendants.

The exhibits attached to the original bill were made exhibits to each of the recast bills. The suit involving the question of title to the lands embraced and included in Lot No. 4 was later heard on a general demurrer filed by the defendants in that case. The demurrer was sustained by the chancellor; the complainants refused to amend; and a final decree was entered dismissing the bill of complaint, and on appeal the decree of the lower court was affirmed by this Court on March 10, 1958, without a written opinion. See Mansfield Anderson et al. v. Cleveland Anderson et al., Cause No. 40,690, 223 Miss. 33, 100 So. 2d 852.

The complainants filed their recast bill of complaint to establish their title to the land embraced and included in Lot No. 3 on November 6, 1956. The defendants filed motions to strike certain portions of the bill, and the court ordered that said portions be stricken. Thereafter general demurrers were filed by the several defendants. The grounds of general demurrer alleged were: (1) That there was no equity on the face of the bill; and (2) that the bill showed on its face that the complainants had no right to or interest in the lands to which they claimed title and no right of possession of said lands. The chancellor sustained the demurrers; the complainants declined to amend their bill; and a final decree was entered dismissing the complainants' bill of complaint. From that decree the complainants have prosecuted this appeal.

Copies of the last will and testament of the said James Anderson, the testator, were attached as exhibits to the original bill of complaint and as exhibits to the recast bill. The will was dated July 16, 1870, and its contents may be summarized as follows: In the first item of said will, the testator provided for his burial and the payment of his funeral expenses. In the second item the testator willed and directed that his executor sell all of his property for cash or on time, as he might elect. In the

third item the testator bequeathed to "Shepherd, Lewis, Richard, Benjamin, Caleb, Edward and Jane Anderson, colored, lately legitimatized by the Legislature of the State of Mississippi, each $1,000.00", and appointed H. J. Thomas their guardian. In the fourth item the testator bequeathed to James Anderson, son of Mary May of Rowan County, North Carolina, $1,000.00. In the fifth item the testator willed and directed that the residue of his estate be divided equally "share and share alike, between my three brothers, Lewis, Minor and Benjamin Anderson, and sister, Lucy, in case of the death of either the children shall heir the share of the parent." In the sixth item the testator appointed H. J. Thomas executor without bond.

The codicil to said will was dated February 3, 1872. The material provisions of the codicil, in which the testator made sweeping changes in the testamentary disposition of his property, are contained in the first paragraph of the codicil, which is as follows:

### "CODICIL

"I, James Anderson of the County of Holmes and State of Mississippi having on the 16th day of July A.D. 1870 made and published my last will and testament in writing and thereby made sundry demises and bequests according to the then existing circumstances of my estate but which circumstances having changed I do by this writing which I hereby declare to be a Codicil to my said will to be taken and construed as a part thereof. In lieu of one thousand dollars bequeath to each Item 3rd, I will devise and bequeath to Shepperd Richard Lewis Benjamin Caleb Edward James and Jane Anderson and after them to their children my plantation on Dry Creek including the Ross place to be equally divided between share and share alike each one on arriving at the age of 21 years may have his or her portion allotted and set off and

put in possession of the same. I further will and direct that should either or any of the above named die without heirs of the body his or her portion shall descend to and be equally divided among the others. The above bequest is made with the limitation that all that portion of the tract lying East of a line running equal distance between the row of cabins and the main dwelling from the Pickens Station Road to S. L. St. Johns line and all north of said Road containing ninety acres I will and bequeath to Sopha Day my colored house woman who has faithfully served and patiently and kindly nursed me in my affliction this bequest is made only during her life and at her death to be divided equally share and share alike among the children above named this bequest is made to Sopha Day on condition that she reside in the dwelling and take special care of the same and the premises and it is my will and request that she keep the children with her take care of and assist them in making a living as far as within her power. This bequest is on further condition that should she marry or take up with any man or keep a disorderly house attempt to sell or dispose of the place or cease to occupy it she shall forthwith vacate the premises and land be divided as above directed.''

The testator, in said codicil, also bequeathed to Shepherd, Richard, Lewis, Benjamin, Caleb, Edward, James and Jane Anderson certain named mules, together with the tools and wagons on the Dry Creek plantation, and one thousand dollars in money for the purchase of supplies for the first year, and appointed William C. Day, Guardian of the above named children instead of H. J. Thomas. The testator then revoked the bequest made in the fourth item of the will to James Anderson, son of Mary May of Rowan County, North Carolina, and the bequest made to Sister Lucy and her children in the fifth item of said will, and finally the testator autho-

rized and empowered his executor to furnish "Sopha and the children all necessary supplies until they are settled on the plantation set off to them."

In their recast bill of complaint, the complainants alleged that the above mentioned will and codicil were admitted to probate by the Chancery Court of Holmes County, and that no contest was filed by the testator's white next of kin to have the will and codicil set aside; that the said James Anderson at the time of his death owned approximately 920 acres of land in Sections 14, 21, 22 and 23, in Township 12, Range 2 East, in said Yazoo County, known as the "Dry Creek Plantation", and also an unexpired leasehold interest in the East Half of Section 16, Township 12, Range 2 East, known as the "Ross Place"; that the said James Anderson had eight children begotton of various Negro women, to whom he willed and devised the above described lands subject to the limitations and conditions stated in said will and codicil; that the names of said children were Shepherd Anderson, Jane Anderson, Richard Anderson, Lewis Anderson, Ben Anderson, Caleb Anderson, Edward Anderson and James Anderson.

The complainants further alleged that, in accordance with the right given to the life tenants in said codicil to have made a partition of the lands devised to them, for themselves and those who took the fee thereafter, the said Richard Anderson, after attaining the age of 21 years, filed a bill in the chancery court, in Cause No. 981, against the other seven children, asking for a partition of the land devised to the eight children in the James Anderson will and codicil, and that a decree was entered at the October 1877 term of the court appointing commissioners to make such partition among the eight children, four of whom were adults at that time; that the lands were divided by the commissioners into eight shares as shown on the surveyor's plat filed with the commissioners' report, and shares numbered 2, 4,

7 and 8 were drawn by and allotted to Shepherd Anderson, Richard Anderson, Jane Anderson Miller (formerly Jane Anderson) and Lewis (Louis) Anderson, respectively; that on October 4, 1881, an order was entered on a petition filed by Benjamin Anderson against Edward Anderson and others, in Cause No. 1080, appointing commissioners to allot and set apart to the other named devisees their respective shares of the lands partitioned, and Share No. 3 was set apart to Edward Anderson, and Share No. 5 was set apart to Benjamin Anderson; that Share No. 6 was drawn and set apart to Caleb Anderson, and Share No. 8 was drawn and set apart to Lewis Anderson, but Caleb and Lewis later executed a deed of exchange, in which each conveyed to the other the lot drawn by him in the partition proceeding.

The record shows that Share No. 3, which was allotted to Edward Anderson as his share of the lands belonging to the estate of James Anderson, deceased, consisted of 34 acres of land in the E½ of the E½ of Section 21, and 39.70 acres in the W½ of the W½ of Section 22, Township 12, Range 2 East, being all woodland, and also 65.60 acres of open land in about the middle of Section 22 north of the public road.

The complainants further alleged in their bill that on December 6, 1882, Edward Anderson executed a deed of trust on the lands allotted to him as Share No. 3 in the division of the James Anderson lands to J. F. and R. E. Wilburn to secure an indebtedness of $125, evidenced by a promissory note for said amount dated December 6, 1882, and payable December 1, 1883; and that, on December 18, 1883, Ed Anderson executed a warranty deed conveying said lands to J. F. Wilburn and R. E. Wilburn for the sum of $275, paid in cash; that on October 21, 1890, J. F. Wilburn conveyed his undivided one-half interest in Lot 3 of the James Anderson Estate lands, along with certain other lands in

Yazoo County, to R. E. Wilburn by special warranty deed; and on March 12, 1902, R. E. Wilburn executed and delivered to (Mrs.) M. P. Wilburn a warranty deed conveying to the said M. P. Wilburn several tracts of land in Yazoo County, including 103 acres of land in Lot 3, Section 22, Township 12, Range 2 East, and 34 acres in the E½ of NE¼, Section 21, in Township 12, Range 2 East, "being 137 acres known as Anderson tract," with the following reservation set forth in the deed: "I only convey such title as I have in this last named Anderson tract." The complainants alleged in their bill of complaint that the said Mrs. M. P. Wilburn died intestate on November 29, 1944, leaving as her sole heirs-at-law her three daughters, Mrs. Martha W. Hooker, Mrs. Kathleen W. Hooker and Mrs. Edna Lowe who succeeded to their mother's interest in said lands at her death.

The complainants further alleged in their bill of complaint that Edward Anderson acquired title to only a life estate in the lands allotted to him as Share No. 3 under the provisions of the will and codicil of the said James Anderson, testator, and that the deed executed by him to J. F. Wilburn and R. E. Wilburn on December 18, 1883, conveyed to the grantees therein no greater estate in said lands than that devised to the said Edward Anderson in said will and codicil, and that all right, title and interest in said lands vested in the said J. F. Wilburn and R. E. Wilburn, as grantees in said deed, and all persons claiming under them were terminated by Edward Anderson's death which occurred on February 25, 1954. The complainants further alleged in their bill that Edward Anderson was the last surviving member of the group of eight children named in said will and codicil; that the said Edward Anderson left no wife or bodily issue surviving him; and that title to the remainder interest in said lands had vested in the heirs-at-law of the other devisees named in the above mentioned will and codicil, all of whom had died during Ed-

ward's lifetime. The complainants further alleged that Caleb Anderson, one of the named devisees, died at the early age of 22 years, unmarried and without bodily issue; that each of the other six named devisees had left bodily issue who had inherited their respective interests in said lands after the termination of said life estate; that the complainants were the children and heirs-at-law of James Anderson, deceased, one of the eight devisees named in said will and codicil and the owner at the time of his death in 1943 of an undivided one-sixth interest in said lands in remainder after the termination of the life estate of the said Edward Anderson; and that complainants claimed title to said undivided one-sixth interest in said lands as such heirs-at-law of the said James Anderson.

The complainants also set forth in their bill a statement of the facts concerning the deaths of the other named devisees mentioned in the will and codicil of the said James Anderson, testator, and the names of the heirs of each of said devisees; and all of said parties who were not named as complainants were named as defendants. The complainants attached to their bill of complaint copies of all instruments of title executed by the said Edward Anderson and his grantees and their successors in title purporting to convey interests in said lands, since the execution of the deed from Edward Anderson to J. F. Wilburn and R. E. Wilburn on December 18, 1883, including an oil and gas lease executed by Mrs. M. P. Wilburn to Kingwood Oil Company on January 30, 1940, and an assignment of an undivided one-half interest in said oil and gas lease to the Sinclair Oil and Gas Company, and also certain mineral and royalty conveyances executed by the heirs of Mrs. M. P. Wilburn after her death; and all of said parties who appeared to have an interest in said lands were named as defendants in said bill of complaint.

In their prayer for relief the complainants asked that the court construe the will of James Anderson, the testa-

tor, and that the court by proper decree adjudge that the said Edward Anderson acquired title to only a life estate in the lands allotted and set apart to him as Share No. 3 in the partition of the lands owned by the said James Anderson, testator, at the time of his death, and that title to the remainder interest in said lands, after the termination of said life estate be adjudged to be vested in the complainants and the other heirs-at-law of the other named devisees mentioned in said will and codicil; and that the court, by proper decree, cancel all instruments mentioned in paragraph 39 of the recast bill, in so far as said instruments affect the complainants' title to their interests in said lands. The complainants also asked for such other relief as they might be entitled to under the pleadings and the evidence.

The chancellor, in ruling on the general demurrers filed by the defendants who deraigned title from Edward Anderson under the warranty deed executed by him to J. F. Wilburn and R. E. Wilburn on December 18, 1883, held that, by the provisions of the will and codicil of the said James Anderson, the testator, there was devised to each of the named Andersons an undivided one-eighth interest in said lands for life; that there was devised to the children of each of said named Andersons the remainder interest in the lands devised to the parent, subject to be defeated upon the death of the parent without heirs of the body; and that, upon the death of any of the named Anderson devisees without heirs of the body, the portion of the one so dying descended to the others of the named Andersons as individuals and not as a class, subject, however, to the devise over in the event of his or her death without heirs of the body. The chancellor then held that the devise contained in the will and codicil as thus construed violated the two-donee statute, Section 2286, Revised Code of Mississippi, 1871, which was in effect at the time the codicil was executed and at the time of the testator's death.

The appellants' attorney has assigned and argued three points as grounds for reversal of the decree of the lower court: (1) That the court erred in holding that the original bill of complaint was multifarious; (2) that the court erred in sustaining the defendants' motions to delete certain portions of the recast bill; and (3) that the court erred in sustaining the general demurrers filed by the defendants and in dismissing the recast bill.

We think there is no merit in either of the first two assignments of error mentioned above. But we think the chancellor erred in sustaining the general demurrers filed by the defendants and in dismissing the recast bill of complaint.

We think the chancellor was correct in his holding that there was devised to each of the named Andersons an undivided one-eighth interest in said lands for life. It is important to note, however, that there was also annexed to that devise the right of each of said named Andersons to have his or her one-eighth share or portion of the lands devised to the eight named Andersons set off to him or her and to be put in possession of same on arriving at the age of 21 years, and that the right thus given to each of said named Andersons was exercised when the lands were partitioned under proper orders of the chancery court. We also think the chancellor was correct in his holding that there was devised to the children of each of said named Andersons, if he should have such children, the remainder interest, after the death of the parent, in the lands set off to such parent, with remainder over, in the event such named Anderson should die without bodily issue, to the other named Andersons as individuals and not as a class.

But we think the chancellor was manifestly wrong in his holding that the remainder interest of any such named Anderson who died without bodily issue descended to the others "subject to the devise over in the event of his or her death without heirs of the body," and in his

holding that the will and codicil violated the two donee statute. The testator in this case did not will and direct that, in the event either or any of the above named Andersons should die without bodily heirs, his or her portion should descend to and be equally divided among the "survivors" or among those who might be living at the termination of such life estate, as in Smith v. Muse, 134 Miss. 827, 98 So. 436; and Carter v. Sunray Mid-Continent Oil Co., 231 Miss. 8, 94 So. 2d 624. The provisions of the will and codicil in this case are in that respect entirely unlike the provisions of the wills which the court had before it in Smith v. Muse, supra, and Carter v. Sunray Mid-Continent Oil Co., supra. "The others" as that term was used by the testator in the codicil in this case, we think, meant others of the eight Anderson children named in the codicil. The gift of the remainder interest to "the others" was a gift to the persons who answered that description at the time of the testator's death, and it was a gift to them in fee simple to be equally divided among them.

It is argued, however, on behalf of the appellees, that the provision in the codicil, "I will, devise and bequeath to Shepperd, Richard, Lewis, Benjamin, Caleb, Edward, James and Jane Anderson, and after them to their children my plantation on Dry Creek * * *," created a fee simple estate in each named Anderson and not a mere life estate; that the phrase "and after them to their children" is not apt for the creation of a life estate; and that the phrase in question does not express-ly limit an estate for life to the named Andersons with remainder to their children. But we think there is no merit in that contention.

In construing a will it is the duty of the court to ascertain the controlling intention of the testator and to give effect to that intention, provided it is lawful. The intention of the testator is to be ascertained from the whole will and from a consideration of all the

provisions of the instrument taken together, and, if the language of the will is clear, definite, and unambiguous, the court must construe the provisions of the will as written, if it can be done consistently with the established rules of law. Bullard v. Bullard, 132 Miss. 544, 97 So. 1.

■■ ■ No particular form of words is necessary to create a life estate, and such an estate may be created where the language of the operative instrument creating estates manifests an intention on the part of the grantor or testator to pass to a grantee or devisee, a right to possess, use, or enjoy property during the period of his life. 33 Am. Jur., 465, Life Estates, Remainders, etc., par. 6, and cases cited. In 3 Page on Wills, p. 345, par. 1106, it is said: "Since the intention of testator is to be ascertained from the entire will, taken as a whole, a life estate, like any other, may be given where the entire will shows such intention, although it is not set forth, in express language, in any clause thereof."

The testator in this case signified his intention to limit the estate devised to the first takers to a life estate not only by the use of the phrase, "and after them to their children," but also by expressly providing that, "should either or any of the above named died without heirs of the body, his or her portion shall descend to and be equally divided among the others." A life estate may be created not only by apt words, but "by necessary implication from those used." Ewing v. Ewing, 198 Miss. 304, 22 So. 2d 225, 161 A.L.R. 606. The phrase, "and after them to their children," may not be an apt phrase for the creation of a life estate; but the language of the codicil as a whole is definite and unambiguous and, in our opinion, shows an unmistakable intention on the part of the testator to give to each of the named devisees only a life estate in the lands allotted and set off to him or her in the partition proceeding, with remainder in fee to his or her children, if there were such children

surviving, and with remainder over to the other named devisees in the event such life tenant should die without bodily heirs.

It is also argued on behalf of the appellees that the effect of the provision in the codicil, that, should either or any of the above named die without heirs of the body, "his or her portion shall descend to and be equally divided among the others," was to pass a fee simple "determinable" estate in the portion of any named Anderson dying without heirs of the body, in equal shares, to the other named Andersons then living—defeasible on the death of any one of them without heirs of the body; and that the estate thus limited was capable of passing in succession from each one of the named Andersons, on his or her death without heirs of the body, to the named Andersons then living, thus creating a possible succession of donees far in excess of two and thereby violating the two-donee statute. But we think that contention has been fully answered above. There is nothing in the will to indicate that it was the testator's intention that the other named Andersons should take such remainder interest subject to the limitation over to which their original shares were subject; and, as we have already stated, the estate which the testator directed should pass to the other named Andersons as remaindermen at the termination of such life estate, was an estate in fee simple and was not subject to the limitation over to which their original shares were subject. Armstrong v. Thomas, 112 Miss. 272, 72 So. 1006. There was no violation of the two-donee statute (Section 2286, Revised Code of Mississippi, 1871), for the reason that there was only one life estate created in each of the eight shares. There was no attempt on the part of the testator to limit the estate to a succession of donees exceeding two.

 It is next argued on behalf of the appellees that the devise over on Edward's death was ineffective, with-

out regard to the two-donee statute, for the reason that the devise over on Edward's death without heirs of the body was to named individuals, all of whom predeceased Edward, and that on Edward's death there were no takers. The appellees' argument on this point is apparently based upon the theory that the interest which the other named Andersons acquired at the death of the testator under the codicil, in the lands allotted to Edward in the partition proceeding, was not such an interest as could descend to the heirs of such other named Andersons. But we think there is no merit in that contention. A similar argument was made on behalf of the appellants in Hays et al. v. Cole, 221 Miss. 459, 73 So. 2d 258, and was rejected by this Court in the opinion rendered in that case on June 14, 1954.

In Hays et al. v. Cole, supra, the Court held that, where the testator devised realty to a devisee with a provision that, should such devisee die without issue, such realty should go to another in fee, the conditional remainderman acquired a vested interest in such realty at the death of the testator, subject to be divested only by the subsequent death of the devisee with issue surviving him, and that such vested interest descended, upon the remainderman's death, to his heirs-at-law, who upon the devisee's subsequent death without issue, acquired title to such realty in fee simple.

In the early case of Barnitz's Lessee v. Robert Casey, 7 Cranch (U.S.) 456, 469, Justice Story, writing for the Court said: "It seems very clear that at common-law, contingent remainders and executory devises are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens. Pollexfen 54, 1 Rep. 99, Cas. Temp. Talb. 117."

In 16 Am. Jur. 794, Descent and Distribution, par. 27, the textwriter says: "A mere naked possibility or expectancy is not descendible. However, a contingent interest or estate is descendible and inheritable where it

is a possibility coupled with an interest, a present interest subject to a condition subsequent, or a present right to future enjoyment on the happening of a contingency.'' That principle of law was definitely recognized by this Court in the case of Alexander et al. v. Richardson, 106 Miss. 517, 64 So. 217, wherein the Court held that, where a father by deed gave to his daughter certain lands for life and to her children, if any, and in default of children, then to his lawful heirs forever, the deed to take effect at the grantors death, in such case the sons of the grantor at his death took at least a possibility, coupled with an interest, which they could convey.

In 16 Am. Jur., 813, Descent and Distribution, par. 44, it is said: ''In the United States it has generally been held that such future interests as reversions, vested remainders, contingent remainders, and executory devises descend according to the general laws of descent and distribution which cover the course of descent of possessory interests or property generally — in other words, such an interest descends to those who answer the description of heirs of that deceased person who, if alive, would have taken such interest — and pass to such heirs without regard to any common-law canons relating to descent 'from the person last seised' or through or by or from the 'blood of the last ancestor.' ''

In 33 Am. Jur., 542, Life Estates, Remainders, etc., Par. 85, it is said: ''More than one estate in remainder may be limited after a single particular estate if the limitation is in the alternative so that one may take effect if the other does not.'' Ringgold v. Carvel, 196 Md. 262, 76 A. 2d 327, the Court said: ''We hold that where there is a devise to one person for life with a contingent remainder to his surviving children in fee simple, and a residuary devise (including the reversion after the life estate) to another, and the life tenant had no children, the residuary devisee takes the fee simple

as a vested remainder. In the language of Professor Tiffany, such a devise presents 'a case of the limitation of a vested remainder subsequent to the limitation of a contingent remainder in fee simple.' 2 Tiffany, Real Property, 3d Ed., sec. 333.''

In the case of In Re Patterson's Estate, 247 Pa. 529, 93 A. 608, Ann. Cas. 1917B, 1243, the Court held that a devise by the testator to one of his sons for life, with remainder in fee at his death to his child or children, and in default of such, to other named children of the testator in equal parts in fee, gave such other named children an estate in remainder, and that since the life tenant had died childless, the representatives of a remainderman who had predeceased the life tenant took the share of such remainderman.

Edward Anderson, according to the allegations of the bill of complaint, was a mere child when James Anderson, the testator, died in 1872. Edward, of course, had no children at that time, and the devise to him of an estate for life and after him to his children, with remainder over, if he should die without bodily heirs, to the other named Andersons, vested in the other named Andersons at the death of the testator an interest or estate in the land, which was capable of sale and transfer by them. Alexander et al. v. Richardson, 106 Miss. 517, 64 So. 217. It was such an interest or estate as could descend to their children and grandchildren upon their deaths, subject to being defeated only by Edward's dying with bodily issue surviving him. Hays et al. v. Cole et al., 221 Miss. 459, 73 So. 2d 258. Whether the interest or estate of the other named Andersons, as remaindermen, was a vested remainder or a contingent remainder, or an executory devise, it was a property right which could be defeated only by Edward dying with bodily issue surviving him, and it descended upon the deaths of the other named Andersons, as other property, to their heirs; and at Edward's death without

bodily issue, title to said land, with the right of possession, was vested in the said heirs as the legal representatives of the remaindermen named in the codicil.

The complainants, in their bill of complaint, alleged that they were the heirs of James Anderson, one of the eight named devisees mentioned in the codicil, and as such the owners of an undivided one-sixth interest in the land. The complainants in their bill stated equitable grounds for relief, and the chancellor erred in sustaining the defendants' general demurrers and in dismissing the bill of complaint.

For the reasons stated above the decree of the lower court is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Hall, Lee, Ethridge* and *Gillespie, JJ.,* concur.

## ON MOTION TO CORRECT RECORD

HALL, J.

 The appellants have filed in this case what they call a motion to correct record, and in this motion they request us to require the chancery clerk to copy anew Paragraph 5 of the recast bill, which appears on pages 434, 435 and 436 of the Supreme Court record, and by copying anew Paragraph 9 of the recast bill which appears on page 438 of the Supreme Court record, and by copying anew Paragraph 10 which appears on pages 438 to 441 of the Supreme Court record, and by copying anew Paragraph 15 which appears on page 443 of the Supreme Court record, and by copying anew Paragraph 26 which appears on page 449 of the Supreme Court record, and by copying anew Paragraph 28 which appears on pages 450 and 451 of the Supreme Court record, and by copying anew Paragraph 29 which appears on pages 451, 452 and 453 of the Supreme Court record, and by copying anew Paragraph 33 on pages 456 and 457

of the Supreme Court record, and by copying anew Paragraph 36 which appears on pages 458 and 459 of the Supreme Court record, and by copying anew Paragraph 37 which appears on pages 459 and 460 of the Supreme Court record, and by copying anew Paragraph 41 which appears on pages 464 and 465 of the Supreme Court record. We have examined each page of the record as indicated in the motion and we do not observe anything erroneous in the motion as to these special pages and there is no showing in the motion as to any reason whatsoever why these several paragraphs should be recopied. In the case of Masonite Corp. v. Guy, on a motion to retax costs, 223 Miss. 15-16, 78 So. 2d 579, we held that a clerk is not entitled to fees for copying several pages into the record which already appear therein. If we should sustain the motion as to the several parts thereof above mentioned, it would merely encumber the record and add a great many pages thereto when there is no showing whatsoever as to any reason why the several pages or paragraphs mentioned should be recopied, and as to said several portions of the motion, the same should be and it is hereby overruled.

The said motion also requests that Paragraph 8 which was apparently skipped completely on page 438 of the Supreme Court record be copied and made a part of the record. It appears that the said Paragraph 8 on page 438 of the record was completely ignored by the Clerk, and as to this feature we think the motion should be sustained.

The said motion also requests that the clerk be required to number the paragraph on page 452 as number 30 beginning on the 13th line from the top of page 452 and ending before Paragraph 31 on page 453, and as to this the said motion will be sustained, but the motion requests further that this part of the record be copied anew and for the reasons already given, the motion in that respect is overruled.

The said motion also requests that the paragraphs which were marked in parenthesis in red and initialed be so marked in the Supreme Court record so as to identify the portions stricken out and omitted from the record in the Supreme Court, and that all portions which were marked in parenthesis in red ink and initialed in the lower court be so marked in the same manner in the new copy for this Court as contemplated by order of the lower court at page 495 of the record.

The motion will therefore be overruled as to the points indicated and will be sustained as to the points indicated.

Motion overruled in part and sustained in part.

*McGehee, C.J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.

## ON MOTION TO VACATE JUDGMENT

ETHRIDGE, J.

Some of the appellees, other than the legal representatives of Cleveland Anderson, appellee, have advised the Court that Cleveland Anderson died on May 30, 1960, about two weeks prior to the rendition of our judgment on June 13, 1960. By that judgment the decree of the Chancery Court of Yazoo County, sustaining general demurrers to appellants' bill of complaint, was reversed and the cause remanded. The suggestion of death also states on information that Anderson left surviving him his widow Hattie and three adult children. Although a party defendant and appellee in this suit, he was not represented by counsel.

In addition to the suggestion of death, the stated appellees have filed a motion to vacate the judgment of this Court and to remand the case to the docket until proper revival is secured by appellants upon the legal representatives of deceased.

Miss. Code 1942, Sec. 1968 provides that where appellant or appellee dies ''after the case has been removed to the Supreme Court and before the decision

thereof, the suit shall not abate''. Legal representatives of the deceased party may be brought in by scire facias, and ''the cause shall proceed for or against them jointly with the surviving plaintiff or defendant.''

In Chapman v. White Sewing Machine Co., 77 Miss. 890, 28 So. 749 (1900), original decision in 76 Miss. 821, 25 So. 868, after judgment and suggestion of error overruled, it was ascertained that one of the appellants was dead at the time of rendition of the judgment. It was vacated, and after a proper revival against legal representatives of deceased, the case was again submitted and decided on its merits.

Callicott v. Horn, 161 Miss. 395, 135 So. 215, 137 So. 190 (1931), was a case where the appellee died after appeal, but before rendition of judgment. Following *Chapman*, the judgment was vacated, the opinion withdrawn, and the case remanded to the docket pending proper revival in the name of deceased's legal representative. Both *Chapman* and *Callicott*, and the provisions of Code Sec. 1968 are in point and control the present issue. Appellants have filed no reply to the suggestion of death, motion, and brief of appellees on this issue.

In summary, because of the death of one of the appellees prior to entry of the judgment of this Court, that judgment is vacated, the opinion withdrawn, and the cause is remanded to the docket pending a proper revival against the legal representatives of Cleveland Anderson, deceased. In view of this disposition of the case, we take no action at this time on the suggestion of error filed by appellees.

Motion to vacate judgment and remand case to docket until revival as to legal representatives of Cleveland Anderson, deceased, sustained.

All Justices concur, except *Roberds, J.*, who took no part.

## ON MOTION TO REINSTATE FORMER OPINION

McGEHEE, C. J.

This case was originally submitted to the Court for consideration and decision on February 15, 1960. The case was well and fully briefed by the attorneys for the respective parties and on June 13, 1960, an opinion was written and decision handed down reversing and remanding the cause to the trial court for the reasons stated in the said opinion. The appeal involved a construction of the will of James Anderson, deceased.

The opinion, as reported in 121 So. 2d 393, was never published in the Mississippi Reports for the reason that on May 30, 1960, one of the parties defendant died and the suit had to be revived in the name of the heirs at law prior to the rendition of a valid and final judgment in the cause in this Court. Consequently, on July 11, 1960, the opinion as reported in 121 So. 2d 393 was vacated and withdrawn and the cause remanded to our docket until a proper revival of the cause could be had. 122 So. 2d 86.

On August 9, 1960, a motion was filed by the appellants asking that this Court reinstate its opinion and judgment rendered as of June 13, 1960, and to which original opinion of June 13, 1960, a suggestion of error was filed by the appellees. Additional briefs have been filed in support of the suggestion of error by the appellees, and a brief in support of the motion to reinstate said former opinion has been filed by the appellants.

We have now considered the suggestion of error and the motion to reinstate our opinion of June 13, 1960, in this cause as reported in 121 So. 2d 393, and have considered the briefs in connection with the suggestion of error and the motion to reinstate and we have concluded that the said opinion of June 13, 1960, should be reinstated as the decision of this Court in said cause, and that the suggestion of error should be and the same is hereby overruled.

The cause is now reversed and remanded and the opinion of June 13, 1960, reported in 121 So. 2d 393, is hereby reinstated as the decision in this case.

Reversed and remanded; suggestion of error overruled; and motion to reinstate former opinion sustained.

*Arrington, Gillespie, McElroy* and *Jones, JJ.,* concur.